UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No. 04-10949-NMG

_____
                                                )
ALICE KIEFT,                            )
    Plaintiff                              )
                                                )
v.                                            )
                                                )
AMERICAN EXPRESS COMPANY,  )
ET AL.,                                  )
    Defendants                    )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

      This case primarily concerns the denial of continued Salary Continuation payments for an American Express floating travel agent, whose claim for salary continuation leave in September of 2002 initially arose from her report of a sprained ankle. After two levels of appeal of the denial of continued benefits, which included three different physicians' reviews of her medical records, American Express determined that it would no longer pay Salary Continuation benefits to the plaintiff.

      American Express policies have express disclaimers indicating that its policies are not contracts, and may be changed at any time. Nonetheless, the plaintiff asserts claims for breach of contract and promissory estoppel based the denial of continued benefits (Amended Complaint, Counts I, II). The defendants move for summary judgment on these counts because by the express terms of the American Express policies there was no contract with the plaintiff, and because the plaintiff cannot show that she reasonably relied on the Salary Continuation policy where it was subject to discontinuance at any time.

The plaintiff also asserts claims for long term disability benefits and waiver of life insurance premiums under the American Express Company Long Term Disability Plan ("LTD Plan") and American Express Company Life Insurance Plan ("Life Insurance Plan") (Amended Complaint, Counts III, IV). The LTD Plan and Life Insurance Plan are employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Accordingly, these claims are governed by ERISA. The defendants move for summary judgment on these ERISA claims because 1) plaintiff cannot show that she has exhausted her administrative remedies as required by the plans 2) plaintiff did not purchase optional life insurance during the relevant period and therefore did not require the waiver of premiums and 3) even if the Court determines that there was exhaustion, and deems her long term disability claim denied, such denial would have been reasonable based on the substantial evidence in the administrative record.

## I.   Summary of Facts[1]

Alice Kieft ("Kieft") worked as a Travel Counsel Floater in 2002 for American Express Travel Services. The job was a sedentary position which required her to provide customers at various locations travel services through a computer. Salary Continuation Leave was a benefit program provided to American Express employees with an express disclaimer as to whether the program would continue, and reserving to the Company the right to make changes to the program without notice to the employees. American Express employment policies, including its Salary Continuation Leave policy, emphasized that the policies did not form an employment contract with the employee.

---

[1] A more complete description of the facts supporting the Defendants' Motion for Summary Judgment is found in Defendants' Statement of Material Facts ("Defendants' Facts").

On or about September 25, 2002, Kieft applied for a salary continuation leave through Metropolitan Life Insurance Company ("MetLife"), the Claims Administrator for American Express. According to Kieft's application, the leave was sought due to a "sprained ankle left" that had apparently occurred on September 20, 2002. MetLife initially approved her leave request for the period September 23, 2002 through October 7, 2002. She returned to work on or about October 8, 2002, and worked various dates through October 23, 2002, when she stopped work. MetLife approved Kieft's leave request through January 2, 2003.

After evaluation of the medical documentation submitted by plaintiff and her physicians in early 2003, MetLife determined that she no longer was entitled to salary continuation leave, and would not receive benefits beyond January 2, 2003. Kieft appealed the salary continuation decision to MetLife, which upheld the decision after a comprehensive review of medical records by two separate physicians. One physician reported his communication with one of Kieft's treating physicians who stated that her inflammatory arthritis was not sufficiently severe to impair her. Defendants' Facts, ¶ 20. Similarly, the other physician who reviewed the medical records reported that the various diagnoses (several of which were not documented by the submitted information), with the exception of left ankle trauma would not be expected to have impaired the patient from work at her own occupation. Defendants' Facts, ¶ 21. With respect to the left ankle sprain, the physician reported that a December 3, 2002 report revealed that the condition had improved, as Kieft was "able to bear weight with little or no discomfort in the cast." Id. MetLife concluded that the objective medical documentation in the file did not support the finding that she could not perform her sedentary occupation as a Travel Agent, and notified the plaintiff of its decision by letter of June 16, 2003.

Kieft then appealed the salary continuation determination to American Express. American Express had the medical records and Kieft's attorney's appeal submission reviewed by yet another physician, who concluded that Kieft was not disabled past January 2, 2003. He stated, among other things, that the "last note from the orthopedist's office indicated that her ankle fracture was healing and that she was able to ambulate with the ankle brace and postoperative shoe. Therefore, there was no reason that she could not return to work." AmEx. Aff. Ex. 7, KIEFT/AMEX 00005.[2] Based on the medical documents, and the sedentary position that Kieft held, American Express determined that there was no objective information indicating that she was unable to perform the essential functions of her job from January 2, 2003 and beyond, and upheld MetLife's decision on October 6, 2003.

Although Kieft's attorney, in his correspondence with MetLife and American Express, alluded to a claim for long term disability benefits, MetLife has no record that Alice Kieft applied for such benefits through the method proscribed to its employees. Defendants' Facts, ¶35. Nor did MetLife ever review whether Kieft was entitled to long term disability benefits under the LTD Plan. Similarly, the Plan Administrator for the LTD Plan, the American Express Employee Benefits Administration Committee ("EBAC"), which was to hear any appeal of a long term disability claim determination, never reviewed any denial of long term disability benefits for Alice Kieft. Defendants' Facts, ¶41.

Similarly, no review or appeal of any life insurance claim or waiver of life insurance premiums under the Life Insurance Plan was conducted by MetLife or EBAC. Further, since

---

[2] The defendants submit the Affidavit of Laura Sullivan ("MetLife Aff."), and Affidavit of Coleen A. Lyons ("AmEx. Aff.") in support of the Motion for Summary Judgment. References to KIEFT#### refer to page numbers in exhibits attached to the MetLife Aff. Similarly, references to KIEFT/AMEX#### refer primarily to page numbers attached to the AmEx. Aff., with the exception of KIEFT 00001-00018, which is attached to the AmEx. Aff. at Exhibit 1. The documents in the exhibits are arranged chronologically.

4

Kieft never purchased any optional life insurance in 2002 or 2003, she did not pay any premiums for life insurance. As a result, even if a claim had been made in 2002 for waiver of life insurance premiums, it would have been moot since she was not paying any life insurance premiums.

## II.   Procedural History

Kieft filed her complaint on May 12, 2004. The parties agreed on a Joint Schedule for the case that was submitted to the Court at a Scheduling Conference on July 19, 2005. The discovery deadline was December 30, 2005, and summary judgment motions were due by February 24, 2006. On February 7, 2006, the plaintiff filed a Motion to Extend the Scheduling Order, which was opposed by the defendants on February 21, 2006.

## III.   Argument

### A.   Kieft's contract claim for salary continuation leave after January 2, 2003 fails because there was no contract with American Express for such leave.

In order to survive a motion for summary judgment, Kieft must show that the parties reached a valid and binding agreement with regard to the Salary Continuation Benefit program. She cannot make out such a claim because she was an "at-will" employee, and the Salary Continuation policy was not part of any implied or express employment contract. American Express clearly disclaimed that the Salary Continuation Benefit program provided to its employees in 2002 created, or was part of any implied or express employment contract with its employees. It specifically reserved the right to discontinue the Salary Continuation program without notice to the employees. Defendants' Facts, ¶3. Although American Express offered the Salary Continuation Benefit program to its employees, it did not consider the policies in the personnel manual to be part of an employment contract for an employee. Defendants' Facts, ¶4. Accordingly, plaintiff's claim for breach of contract based upon the denial of the salary continuation leave, should be dismissed. Jackson v. Action for Boston Community

Development, Inc., 403 Mass. 8 (1988); Coll v. PB Diagnostic Systems, Inc., 50 F. 3d 1115 (1st Cir. 1995).

In Jackson, the Massachusetts Supreme Judicial Court, affirming the grant of summary judgment in favor of the employer on employee's breach of contract claim, concluded that a jury could not decide reasonably that the parties had entered an implied contract based on a manual's terms. The employer's manual, as here, specifically reserved the right to change the policies. Similarly, the employer had unilaterally changed the personnel policies' terms in the past, and did not consider the policies or guidance set forth in the manual as part of an employment contract with any employee. Although the employer in Jackson had adhered to the grievance procedures set out in the personnel manual, the Court concluded that "the conclusion is inexorable that no implied contract based on the personnel manual's terms existed" under the circumstances where the employer "retained the right to modify unilaterally the personnel manual's terms." Jackson, 403 Mass. at 14. In this case, American Express expressly denied that the Salary Continuation benefits program was a contract, and reserved the right to unilaterally make changes to the program at any time. Kieft cannot demonstrate that there was any contract to breach, and summary judgment is therefore appropriate on Count I of the Amended Complaint.

      **B.**      **Kieft cannot show that she reasonably relied on a promise to provide Salary Continuation Leave when such benefits were subject to change at any time.**

To succeed on her claim for promissory estoppel, among other elements, Kieft must show that she reasonably relied on an alleged promise to her detriment. Coll v. PB Diagnostic Systems, Inc., 50 F. 3d. 1115 (1st Cir. 1995); Sands v. Ridefilm Corp., 212 F. 3d 657 (1st Cir. 2000). Given the express reservation of rights in the Salary Continuation policy to discontinue the program at any time, any alleged reliance on the policy cannot be found to be reasonable.

6

Since she cannot show reasonable reliance on a policy which could be withdrawn at any time, this claim must also fail.

In Coll, the First Circuit affirmed the district court's grant of summary judgment for an employer on plaintiff's promissory estoppel claim. The Court held that even if the employer had promised to create a long-term incentive plan benefit worth $1,000,000, the employee could not have reasonably relied on such a promise when the written employment offer was at odds with it, and contained noncommittal language regarding the benefit. Accordingly, any reliance on prior more conclusive oral representations was unreasonable. Here, Kieft has not alleged that there were any promises of payment for salary continuation leave other than those contained in the Salary Continuation Plan. Amended Complaint, ¶44. The American Express personnel policies, and the Summary Plan Descriptions associated with the Salary Continuation Plan, each contained clear written notices that the Salary Continuation Plan could be terminated by American Express at any time without prior notice to the employees. In the face of such clear written notice, any purported reliance on the future provision of Salary Continuation benefits could not be reasonable. Summary judgment in defendants' favor should be granted on Count II of the Amended Complaint.

  **C.** **Even if Kieft's claims for Salary Continuation Leave are viable given the express disclaimers in the policies and Summary Plan Description, the leave was appropriately denied.**

Under settled Massachusetts law, interpretation of a contract is ordinarily a question of law for the Court. Coll v. PB Diagnostic Systems, Inc., 50 F. 3d 1115 (1st Cir. 1995). Plaintiff's claims for breach of contract and promissory estoppel, to the extent they survive, require the Court to find that the plan's administrator abused its discretion when it determined that Kieft was not disabled under the terms and conditions of the Salary Continuation policy after January 2,

2003. If the defendants did not abuse their discretion in making the determination that Alice Kieft was not disabled, there was no breach of contract or failure to uphold their promise.

The Salary Continuation Plan policy provided to American Express employees defined disability as the "inability to perform the material functions of your job due to a medically determined physical or mental impairment that is caused by sickness, disease, injury or pregnancy." Defendants' Facts, ¶15. The policy also provided that the plan administrator had the sole authority and discretion to determine eligibility for and interpretation and administration of the program. Defendants' Facts, ¶ 8. Accordingly, this Court in interpreting the meaning of "disability" under the Salary Continuation policy, must find that defendants' interpretation of "disability" relative to the plaintiff was an abuse of discretion. Based upon the undisputed facts, the Court should not make such a finding.

MetLife terminated Kieft's claim for salary continuation benefits on the basis of its review of the medical records Kieft submitted, and upheld that determination after the further review of two separate physicians: Jefrey Lieberman, M.D., Board Certified in Internal Medicine and Rheumatology, and Gary P. Greenhood, M.D., Board Certified in Internal Medicine and Infectious Diseases. Defendants' Facts, ¶22. (MetLife's appeal determination letter is attached to the MetLife Aff., Ex. 3 at KIEFT 00147-00150.) Dr. Lieberman's June 10, 2003 report of his medical review included the description of a telephone call with one of Kieft's treating physicians, Menachem Kohen, M.D. Dr. Lieberman reported he "spoke with Dr. Cohen (sic) today. He states that the claimant does have some evidence of psoriatic/rheumatoid arthritis, but that this is not a major problem at this point." Dr. Lieberman's report further states that "knee and back osteoarthritis in and of itself should not prevent the claimant from performing the duties as a travel agent. He (Dr. Kohen) feels that her primary symptoms relate to depression

8

and fibromyalgia. Fibromyalgia in and of itself should not be sufficient to prevent the claimant from performing the duties of a light or sedentary occupation." Defendants' Facts, ¶ 21. (Dr. Lieberman's complete report is attached to the MetLife Aff. Ex. 3 at KIEFT 00433-00435.) With respect to Kieft's ankle sprain, it was reported that she had been found to have a cuboid fracture and had been placed in a cast. Referring to medical records from Kieft's orthopedist, Dr. Lieberman reported that a report on December 3, 2002 contained the reference, "We settled upon an ASO ankle brace and postop shoe. She found those quite comfortable and was able to walk without pain," Id. (The December 3, 2002 report is at MetLife Aff. Ex. 2, KIEFT 00180.) Dr. Greenhood's report to MetLife contained the conclusion that Kieft's various diagnoses "(with the exception of left ankle trauma) would not be expected to have impaired the patient from work at her own occupation." Defendants' Facts, ¶ 21. (Dr. Greenhood's complete report is attached to the MetLife Aff. Ex. 3 at KIEFT 00436-00438.)

American Express provided Kieft with a Second Level of Appeal for her claim for Salary Continuation benefits. Defendants' Facts, ¶25. American Express also forwarded Kieft's medical records to an outside physician, Stuart Kaplan, M.D., Board Certified Rheumatology and Internal Medicine, for an independent review of her level of functionality. Defendants' Facts, ¶¶26, 27. (Dr. Kaplan's complete report is attached to the AmEx. Aff. Ex. 7 at KIEFT/AMEX 00003 – 00008.) Dr. Kaplan also noted the December 3, 2002 progress note from Kieft's orthopedist which indicate that with an ankle brace and postop shoe she was "able to walk without pain." With respect to the diagnosis of fibromyalgia, Dr. Kaplan recognized that a questionnaire completed by Kieft's physician and submitted with the plaintiff's appeal indicated that she was tender in all fibromyalgia points; "however, what these specific points were is not documented in any of the medical records that were submitted.," and "[m]ore

9

importantly, there is no objective documentation of Ms. Kieft's functional capacity, and there is no objective documentation of any musculoskeletal impairment that would prevent her from performing her usual occupational functions." Dr. Kaplan further opined, "While fibromyalgia can sometimes be a cause of disability, there needs to be objective medical evidence of Ms. Kieft's functional capacity that indicates an inability to perform basic tasks that are necessary for the patient's occupation." With respect to a rheumatology perspective, Dr. Kaplan noted that based on the medical records, Kieft's objective findings indicate "only a mild impairment" and that Kieft does have psoriatic arthritis that "is under good control with sulfasalazine." Dr. Kaplan concluded that "There was no objective measurement of her physical capacity or mental capacity that would document impairment sufficient to render her disabled."

The three different physicians who reviewed Kieft's records were consistent in their opinion that she was not disabled from her position beyond January 2, 2003. Although she had provided her physicians with subjective complaints and symptoms, there was not objective evidence sufficient to determine that she was disabled. Indeed, the objective evidence – she was walking, her physician reported that her diabetes mellitus was doing well, and her physician reported that her psoriatic/rheumatoid arthritis was not a major problem at this point – indicated that she was able to perform the essential functions of her sedentary job. Given that the Salary Continuation policy provides complete discretion to the administrator to make determinations of eligibility, and that Kieft's medical records were reviewed by three separate physicians who concluded that she was not disabled, American Express's reasonable conclusion that Kieft was not entitled to Salary Continuation leave beyond January 2, 2003 is entitled to deference. Based upon the undisputed facts presented by the record, this Court should similarly interpret the Salary

10

Continuation policy to the extent it determines that it is indeed a contract or promise, to find that American Express appropriately decided that Kieft was not entitled to additional leave.

> **D.** **Kieft's failure to exhaust her administrative remedies with respect to her claim for long-term disability benefits and life insurance premium waivers bar her ERISA claims.**

It is undisputed that neither MetLife nor American Express ever reviewed Kieft's claims for long term disability benefits or life insurance premium waivers. Defendants' Facts, ¶ ¶40, 41, 53, 54. It is also undisputed that Kieft never filed a claim for long term disability benefits or life insurance benefits through the method proscribed in the Summary Plan Description for the LTD Plan or the Life Insurance Plan. Defendants' Facts, ¶ ¶35, 47. It is also undisputed that there was no appeal of any decision (because there was none) of any denial of a claim for long term disability benefits or life insurance as required by the LTD Plan and Life Insurance Plan. Defendants' Facts, ¶¶37, 38, 39, 49, 50, 51. Although her attorney alluded to long term disability benefits in certain correspondence regarding Kieft's salary continuation leave request, no application was made for these benefits. Most importantly, there was no opportunity for a claim review or appeal to occur at the American Express Employee Benefits Administration Committee ("EBAC"). Defendants' Facts, ¶¶41, 53.

ERISA requires that "every employee benefit plan shall…afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. In order to render this clause meaningful, and because contractual interpretation of a benefit plan is seen as a task best left to a plan administrator, this Court has compelled plaintiffs to exhaust all benefit denial claims through an appeal process prior to filing litigation. Santana v. Deluxe Corp. 12 Supp. 2d 162, 174-5 (D. Mass. 1998); Drinkwater v. Metropolitan Life Ins. Co., 846 F. 2d 821

11

(1st Cir. 1998). Further, although there is an exception to the exhaustion requirement if the plaintiff produces evidence that resort to the administrative route would be futile, a "blanket assertion, unsupported by any facts, is insufficient to call this exception into play." Id., at 826.

American Express only considered the plaintiff's salary continuation claim. And, her salary continuation claim was not considered by EBAC, but by the American Express Director of Nursing Services. The letter from American Express of October 6, 2003 in its first line states "A review of Ms. Kieft's salary continuation appeal that was denied in part by MetLife has been completed." It does not allude in any way to a long term disability claim. In short, EBAC, the American Express committee designated with the responsibility to evaluate its employees' claims for long term disability benefits or denial of life insurance claims, was denied the opportunity to review plaintiff's claim. Judgment should enter for the defendants on Counts III and IV of the Amended Complaint due to the plaintiff's failure to exhaust her administrative remedies.

> **E.** **Even if the Court determines that exhaustion of administrative remedies was not required, a denial of Long Term Disability Benefits would be supported by substantial evidence.**

The LTD Plan and Life Insurance plan give the plan administrator full authority and discretion to make claim determinations. The Summary Plan Description entitled American Express Administrative Information (Health & Welfare Plan) states the following:

> The Plan Administrator has the full authority to exercise discretion in determining eligibility and interpretation and administration of the Plans.

Defendants' Facts, ¶33. Where, as here, the plan administrator is given authority and discretion to determine eligibility and to interpret and administer the Plan, a deferential arbitrary and capricious standard of judicial review is mandated. Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183-85 (1st Cir. 1998); Diaz v.

12

Seafarers International Union, 13 F.3d 454, 456 (1st Cir. 1994). In this case, if the Court determines that the lack of review of plaintiff's claim for long term disability benefits was a denial, such determination must be reviewed under this deferential standard.

The arbitrary and capricious standard strictly limits the grounds upon which an administrator's discretionary determination can be disturbed. Most important, a reviewing court should not "substitute its judgment for that of the [decision-maker]." Terry, 145 F.3d at 40 (brackets in original), quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). As the First Circuit emphasized in Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8 (1st Cir. 1985), it is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan administration. Id. at 9. A reviewing court, therefore, should not determine which side it believes is right. Doyle, 144 F.3d at 184. Instead, the court should give administrators "considerable leeway to interpret and to apply" plan provisions, "setting aside those ... decisions only if they are arbitrary, capricious, or an abuse of discretion." Diaz, 13 F.3d at 456.

In the context of factual determinations, the court's limited role is to determine whether an administrator's determination was supported by "substantial" evidence. Terry, 145 F.3d at 41; Doyle, 144 F.3d at 184. "Substantial" evidence, in this context, means "evidence reasonably sufficient to support a conclusion." Doyle, 144 F.3d at 184. When evaluating the evidence in the claim file, American Express and MetLife had the discretion to weigh the evidence and to resolve any conflicts. Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 32 (1st Cir. 2001) ("It is the responsibility of the Administrator to weigh conflicting evidence."); Doyle, 144 F.3d at 185 (administrator's discretionary power includes ability to make "factual findings as to plaintiff's condition"); Guarino v. Metropolitan Life Ins. Co., 915 F. Supp. 435, 445 (D.Mass.

13

1995) ("MetLife had the discretion to interpret the Plan, weigh the evidence, and make its own final determination.").

The question of whether an administrator's determination was reasonable is appropriately answered at the summary judgment stage. In Terry, for example, the First Circuit upheld an award of summary judgment in favor of an administrator. Terry, 145 F.3d at 40-41. See also Sullivan v. Raytheon Co., 262 F.3d 41, 50-52 (1st Cir. 2001) (same); Vlass, 244 F.3d at 32 (reversing award of summary judgment for participant and ordering summary judgment for administrator); Doyle, 144 F.3d at 186-87 (same). In this case, Kieft bears the summary judgment burden "of making 'a showing sufficient to establish' a violation of ERISA, namely, that [the actions of American Express and MetLife were] unreasonable." Terry, 145 F.3d at 34, quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendants' determinations were reasonable – i.e., supported by reasonably sufficient evidence – then Kieft cannot satisfy this burden, and the defendants' are entitled to summary judgment. As explained more thoroughly in Part C, supra, of the Argument, the determination that Kieft was not disabled from her job as a travel agent was supported by sufficient evidence. MetLife and American Express obtained the opinions of three physicians who reviewed her medical records, and based on objective information determined that she was capable of working. This reasonable determination should not be disturbed, and summary judgment granted for the defendants on Count III of the plaintiff's Amended Complaint.

**F.    Kieft can have no claim under the Life Insurance Plan for waiver of premiums where she never purchased optional life insurance under the Plan.**

American Express offered its employees an opportunity to purchase optional life insurance through MetLife. Defendants' Facts, ¶42. Kieft did not purchase any optional life insurance in 2002 or 2003. Accordingly, she did not pay any premiums or make any contributions in 2002 or 2003 for optional life insurance. Defendants' Facts, ¶43. In short, she cannot make out a claim for a purported denial of premium waivers, since she did not purchase optional life insurance which required contributions. Summary judgment should be entered in favor of the defendants on Count IV of the plaintiff's Amended Complaint because no waiver of premiums was required, even if she was disabled.

## IV.    Conclusion

For the foregoing reasons, the defendants respectfully request this Court to enter summary judgment in their favor on all Counts of the plaintiff's Amended Complaint.

> DEFENDANTS,
> By their attorneys,
>
> /s/ Constance M. McGrane
> James F. Kavanaugh, Jr. BBO#262360
> Constance M. McGrane BBO#546745
> CONN KAVANAUGH ROSENTHAL
>   PEISCH & FORD, LLP
> Ten Post Office Square
> Boston, MA 02109
> (617) 482-8200

Dated:  February 24, 2006
247878.1