UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No. 04-10949-NMG

_____
                                    )
ALICE KIEFT,                        )
        Plaintiff                   )
                                    )
v.                                  )
                                    )
AMERICAN EXPRESS COMPANY,           )
ET AL.,                             )
        Defendants                  )
_____ )

## DEFENDANTS' STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, defendants American Express Company ("American Express"), American Express Company Long Term Disability Plan ("LTD Plan"), and American Express Company Life Insurance Plan ("Life Insurance Plan") state the following material facts.[1] The following facts are those principally relied on by the defendants in their summary judgment motion.

## BACKGROUND

1. Alice Kieft was employed as a Field Staff Support Specialist, also known as a Travel Counsel Floater in 2002 by American Express. She was an "at-will" employee, with an annual salary of $41,551.74. AmEx. Aff. ¶3.

---

[1] The defendants submit the Affidavit of Laura Sullivan ("MetLife Aff."), and Affidavit of Coleen A. Lyons ("AmEx. Aff.") in support of the Motion for Summary Judgment. References to KIEFT#### refer to page numbers in exhibits attached to the MetLife Aff. Similarly, references to KIEFT/AMEX#### refer primarily to page numbers attached to the AmEx. Aff., with the exception of KIEFT 00001-00018, which is attached to the AmEx. Aff. at Exhibit 1. The documents in the exhibits are arranged chronologically.

2.      American Express's employment policies, including its Salary Continuation Benefit program were outlined in 2002 in a personnel manual that included a disclaimer emphasizing that the guidelines did not form an employment contract.  AmEx. Aff. ¶4.

3.      Similarly, the Salary Continuation policy outline in the personnel manual, stated at its conclusion "This memo does not create a contract of employment between the Company and any employee." AmEx. Aff. ¶5, Exhibit ("Ex.") 1; KIEFT 00018.  American Express also stated in its policy regarding Salary Continuation benefits that, "The company reserves the right to make changes in, or discontinue Company policies, compensation plans, benefits and programs as it deems appropriate, and these changes may be implemented even if they have not been communicated in this (or by change to this) document or otherwise." Id.

4.      American Express reserved the right to amend or even terminate the Salary Continuation Benefits Program at any time without prior notice or consent by employees.  AmEx. Aff. ¶6, Ex. 2, KIEFT/AMEX 00242.

5.      MetLife was the Claims Administrator for the Salary Continuation Benefit program provided by American Express for its employees in 2002 and 2003.  MetLife Aff. ¶3.  In the event the employee's claim was denied, the participant could appeal the decision to MetLife as the Claims Administrator within 30 days.  AmEx. Aff. ¶6, Ex. 2 KIEFT/AMEX 00231.  In addition, as Alice Kieft's claim was administered in 2003, she was provided with a second level of appeal to American Express.  AmEx. Aff. ¶12.

Salary Continuation Benefit Policy

6.      American Express had a policy in 2002 to provide certain Salary Continuation benefits to its employees in the event of disability.  A description of the program, including a Summary Plan Description and  description of the policy, as well as administrative information regarding the

Salary Continuation Benefit program were provided to American Express employees. AmEx. ¶6. The description of the program provided to employees contained language both reserving the right to make changes in the program. and indicating that the policy did not create a contract of employment between American Express and any employee. AmEx. Aff. ¶5, Ex. 1, KIEFT 00018.

7. The American Express Administrative Information (Health & Welfare Plans) Summary Plan Description ("Administrative Information") set out the claim and appeal process for salary continuation benefit claims. AmEx. Aff. ¶6.

8. The Salary Continuation policy provided to American Express employees provided:

> The applicable plan administrator has the sole authority and discretion in determining eligibility for and interpretation and administration of the programs.

AmEx. Aff., Ex. 1, KIEFT 00018.

9. The Salary Continuation Benefit policy for American Express employees in 2002 and 2003 provided that an employee was entitled to a maximum of 26 weeks of Salary Continuation Benefit payments during a twelve month rolling period. MetLife Aff. ¶7.

10. Alice Kieft received a total of twenty (20) weeks and one day of Salary Continuation Benefits during the twelve month period beginning June 21, 2002. Under the policy, the most she could recover under the Salary Continuation policy if she was totally disabled during that twelve month period would be an additional six (6) weeks of payments. MetLife Aff. ¶7.

Salary Continuation Leave Application

11. Alice Kieft applied for a salary continuation leave on or about September 25, 2002. According to the Health Care Provider Certification provided by her attending physician, Dr. Jana Oettinger, she sought leave due to a "sprained ankle left" that approximately occurred on

3

9/20/02.  The expected duration of the leave was one week.  MetLife Aff., Ex. 2, KIEFT 00161-00162; KIEFT 00304.

12. MetLife approved Alice Kieft's salary continuation leave request for the period from September 23, 2002 through October 7, 2002.  She returned to work on or about October 8, 2002, and worked various dates through October 23, 2002.  MetLife Aff. Ex. 1, KIEFT 00029; Ex. 3, KIEFT 00205.  She left work again on October 24, 2002.  Amended Complaint and Jury Demand, ¶13.  She was granted additional Salary Continuation leave benefits from October 24, 2002 through January 2, 2003.  MetLife Aff. ¶5.

13. The Salary Continuation benefit program for American Express provides that the maximum total benefits period "cannot exceed 26 weeks in a rolling 12-month period."  AmEx. Aff. Ex. 1, KIEFT/AMEX 00271.  The rolling 12-month period "is measured backward from the date an employee uses any Salary Continuation Leave."  AmEx Aff. Ex. 1, KIEFT 00002. In Alice Kieft's case, since she used twenty (20) weeks of Salary Continuation leave benefits during the twelve month period, she had six weeks remaining for benefits in the event she was totally disabled during that time.  MetLife Aff. ¶7.

14. The formal job description for the plaintiff's position of Field Staffing Support Specialist communicated by American Express to MetLife provides that the floater is:

> Responsible for timely and accurate servicing of American Express Business Travel arrangements for corporate clients.  Provides lowest available fares on air/rail transportation, hotels, and auto rentals through effective use of computer systems, positive telephone service techniques, and excellent client relations.

MetLife Aff., Ex. 3, KIEFT 00203.

15. The definition of "disability" in the Salary Continuation policy is "the inability to perform the material functions of your job due to a medically determined physical or mental

impairment that is caused by sickness, disease, injury or pregnancy." AmEx. Aff., Ex. 1, KIEFT 00002

16. After evaluation of the medical documentation submitted by the plaintiff and her physicians, MetLife determined that she no longer met the definition of disability under the Salary Continuation policy, and would not receive benefits beyond January 2, 2003. MetLife Aff. ¶5, Ex.3, KIEFT 00337-00338. Alice Kieft was notified of this decision by letter on February 11, 2003. Id.

17. A complete copy of the medical documents and records that MetLife received from Alice Kieft's physicians relating to her claim for Salary Continuation leave prior to its determination that she no longer met the definition of disability under the Salary Continuation policy is attached to the MetLife Aff., as Ex. 2. MetLife Aff. ¶12.

Salary Continuation Appeal To MetLife

18. Alice Kieft appealed the salary continuation denial decision by letter dated March 7, 2003, with attached medical records. MetLife Aff. ¶5, Ex.3, KIEFT 00188 – 00199.

19. MetLife had the medical records which had been submitted by plaintiff reviewed by two independent physicians, who provided reports to MetLife. MetLife Aff. ¶6.

20. One physician, Jefrey D. Lieberman, M.D., was Board Certified in Internal Medicine and Rheumatology. Dr. Lieberman prepared a report for MetLife disability regarding plaintiff's claim. Dr. Lieberman indicated in his report to MetLife of June 10, 2003, that he had spoken with one of Alice Kieft's treating physicians, Dr. Kohen (misspelled in Dr. Lieberman's report). Dr. Lieberman reported that Dr. Kohen stated that he "did not feel that her inflammatory arthritis was sufficiently severe to impair her." MetLife Ex.3, KIEFT 00433-00435. Dr. Lieberman

concluded in his report, that "[t]here is nothing specific in the records that would indicate that the claimant has functional impairment for her previous job occupation as a travel agent." Id.

21.     The second physician that reviewed the plaintiff's records was Gary P. Greenhood, M.D., Board Certified in Internal Medicine and Infectious Diseases. MetLife Aff. ¶6. Dr. Greenhood reported that he was to review the medical information to determine whether the medical information in the file supported Alice Kieft's inability to work in her own occupation subsequent to 1/2/03. MetLife Aff. Ex.3, KIEFT 00436-00438. The report states in summary that the patient's diagnoses of fibromyalgia, (whose presence was not documented) rheumatoid arthritis, psoriatic arthritis, obesity, sleep apnea (whose presence was not documented), and diabetes mellitus "with the exception of left ankle trauma) would not be expected to have impaired the patient from work at her own occupation." Id.

22.     The plaintiff was notified of the appeal decision through her attorney by letter on June 16, 2003. MetLife determined that its previous decision was valid. MetLife Aff. ¶5, Ex. 3, KIEFT 00147-00150.

23.     Plaintiff's attorney sent a letter dated June 16, 2003, by fax on June 17, 2003 to MetLife. MetLife Aff. Ex. 3, KIEFT 00204-00209.

24.     MetLife informed plaintiff's attorney by letter of July 17, 2003 that a second level of appeal of plaintiff's Salary Continuation claim was available to the plaintiff through American Express. MetLife Aff., Ex. 3; KIEFT 00152. Following additional correspondence about the appeal, a second letter dated August 14, 2003, was sent to plaintiff's attorney by MetLife regarding the appeal review of the plaintiff's Salary Continuation Claim. MetLife Aff., Ex. 3, KIEFT 00254. The letter again advised that the appeal of the Salary Continuation claim should be to American Express.

Salary Continuation Appeal to American Express

25. Alice Kieft's attorney filed a Second Level of Appeal with respect to her claim for benefits under the Salary Continuation Plan with American Express on August 22, 2003. AmEx. Aff., ¶16.

26. American Express forwarded the medical records relating to Alice Kieft to an outside physician for an independent review of her level of functionality. AmEx. Aff. ¶17.

27. The physician who reviewed the medical records for Alice Kieft for American Express was Stuart Kaplan, M.D., Board Certified Rheumatology and Internal Medicine. AmEx. Aff.¶17. After a review of the medical records, Dr. Kaplan concluded that "the clinical findings and objective signs that are documented in the medical records that were reviewed do not document objective findings of impairment that would prevent Mr. Kieft from performing her usual occupation as a floating travel agent. This position is mostly sedentary with some travel involved but does not require strenuous exercise." AmEx. Aff. Ex. 7, KIEFT/AMEX 00003-00008.

28. American Express upheld MetLife's decision to deny Alice Kieft's salary continuation benefits beyond January 2, 2003, and notified the plaintiff through her attorney by letter dated October 6, 2003. AmEx. Aff. ¶17, Ex. 7, KIEFT/AMEX 00001.

Long-Term Disability Policy

29. American Express also provided its employees with an opportunity to purchase long-term disability insurance through MetLife. AmEx. Aff. ¶¶9, 10.

30. The American Express Long Term Disability Plan ("LTD Plan") is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Amended Complaint, ¶11.

7

31. MetLife was the Claim Administrator for the LTD Plan. AmEx. Aff. ¶11.

32. The Summary Plan Description for the LTD Plan, as well as a Summary Plan Description entitled American Express Administrative Information (Health & Welfare Plans), were provided to American Express employees to describe the LTD Plan and to provide information as to how to make benefit claims, and how to appeal decisions on the claims. AmEx. Aff. ¶¶5, 6, 7, 8.

33. The Summary Plan Description entitled American Express Administrative Information (Health & Welfare Plans) stated the following: "The Plan Administrator has the full authority to exercise discretion in determining eligibility and interpretation and administration of the Plans." It explained further: "The Plans described here may be amended or even terminated by the Company at any time without prior notice to or consent by employees. These SPDs do not create a contract of employment between the Company and any employee." AmEx. Aff. Ex. 2, KIEFT/AMEX 00242.

34. The Summary Plan Description for the LTD Plan provided that an employee applying for Long Term Disability benefits was to contact MetLife at a particular phone number to begin the filing process. AmEx. Aff. Ex. 3, KIEFT/AMEX 00250.

35. MetLife has no record that Alice Kieft applied for long term disability benefits through the proscribed telephone number in 2002 or 2003. Nor did MetLife ever review whether Alice Kieft was entitled to long term disability benefits under the LTD Plan. MetLife. Aff. ¶9.

36. The Plan Administrator for the LTD Plan was the Employee Benefits Administration Committee ("EBAC") of American Express. AmEx. Aff., ¶12.

37. In the event a participant's claim for long term disability benefits was denied by the Claim Administrator, the participant could appeal the decision to MetLife, for a First Level

Appeal, in writing and within a specified time period of 180 days from the receipt of notice of the claim determination. AmEx. Aff. ¶12, Ex. 2, KIEFT/AMEX 00228 - 00231.

38.     If the participant's claim for long term disability benefits was denied by the Claim Administrator after a First Level Appeal, the participant could again appeal the decision to EBAC, for a Second Level Appeal, in writing and within a specified time period of 180 days from the receipt of notice of the First Level Appeal determination. AmEx. Aff. ¶12, Ex. 2 KIEFT/AMEX 00230.

39.     The American Express Administrative Information (Health & Welfare Plans) Summary Plan Description provides that if a long term disability claim has been denied, and then the adverse benefit determination has been upheld on appeal "you will be required to file a next level appeal with the EBAC to exhaust your administrative remedies." AmEx. Aff. Ex. 2, KIEFT/AMEX 00230.

40.     MetLife did not review any claim for long term disability benefits for Alice Kieft. MetLife Aff. ¶9. Nor did MetLife perform a First Level Appeal on any claim determination for long term disability benefits for Alice Kieft. Amended Complaint, ¶26.

41.     EBAC did not review any appeal of any denial of long term disability benefits for Alice Kieft. AmEx. Aff. ¶13. Nor did EBAC perform a Second Level Appeal on any claim determination for long term disability benefits for Alice Kieft. AmEx. Aff. ¶14; Amended Complaint, ¶26.

Life Insurance Policy

42. American Express also provided its employees with an opportunity to purchase optional life insurance through MetLife. AmEx. Aff. ¶¶9, 10.

43. Alice Kieft did not purchase any optional life insurance in 2002 or 2003. Accordingly, she did not pay any premiums or make any contributions in 2002 or 2003 for optional life insurance. AmEx. Aff. ¶10.

44. The American Express Life Insurance Plan ("Life Insurance Plan ") is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Amended Complaint, ¶12.

45. MetLife was the Claim Administrator for the Life Insurance Plan. AmEx. Aff. ¶11.

46. The Summary Plan Description for the Life Insurance Plan, as well as a Summary Plan Description entitled American Express Administrative Information (Health & Welfare Plans), were provided to American Express employees to describe the Life Insurance Plan and to provide information as to how to make benefit claims, and how to appeal decisions on the claims. AmEx. Aff. ¶¶6, 7, 8.

47. The Summary Plan Description for the Life Insurance Plan provided that an employee filing a claim for employee life insurance was to provide MetLife with written notice of the employee's death or the employee's dependent's death. AmEx. Aff. Ex.5, KIEFT/AMEX 00262.

48. The Plan Administrator for the Life Insurance Plan was the Employee Benefits Administration Committee ("EBAC") of American Express. AmEx. Aff., ¶12.

49. In the event a participant's claim for life insurance benefits was denied by the Claim Administrator, the participant could appeal the decision to MetLife, for a First Level Appeal, in

writing and within a specified time period of 60 days from the receipt of notice of the claim determination.  AmEx. Aff. ¶12, Ex. 2, KIEFT/AMEX 00228 - 00231.

50.     If the participant's claim for life insurance benefits was denied by the Claim Administrator after a First Level Appeal, the participant could again appeal the decision to EBAC, for a Second Level Appeal, in writing and within a specified time period of 60 days from the receipt of notice of the First Level Appeal determination.  AmEx. Aff. ¶12, Ex. 2 KIEFT/AMEX 00230.

51.     The American Express Administrative Information (Health & Welfare Plans) Summary Plan Description provides that if a life insurance claim has been denied, and then the adverse benefit determination has been upheld on appeal "you will be required to file a next level appeal with the EBAC to exhaust your administrative remedies."  AmEx. Aff. Ex. 2, KIEFT/AMEX 00230.

52.     MetLife did not review any claim for life insurance benefits for Alice Kieft.  Nor did MetLife perform a First Level Appeal on any claim determination for life insurance benefits for Alice Kieft.  Amended Complaint, ¶26.

53.     EBAC did not review any appeal of any denial of life insurance benefits for Alice Kieft. AmEx. Aff. ¶14.  Nor did EBAC perform a Second Level Appeal on any claim determination for

long term disability benefits for Alice Kieft.  AmEx. Aff. ¶14; Amended Complaint, ¶26.

                                               DEFENDANTS,
                                               By their attorneys,

                                                /s/  Constance M. McGrane
                                               James F. Kavanaugh, Jr. BBO#262360
                                               Constance M. McGrane BBO#546745
                                               CONN KAVANAUGH ROSENTHAL PEISCH  & FORD, LLP
                                               Ten Post Office Square
                                               Boston, MA 02109
                                               (617) 482-8200

Dated: February 24, 2006

247389.1