## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

**ALICE KIEFT,**
                              **Plaintiff**                              **04 CV 10949 NMG**

   **v.**

**AMERICAN EXPRESS COMPANY,**
**AMERICAN EXPRESS COMPANY LONG**
**TERM DISABILITY PLAN, and**
**AMERICAN EXPRESS COMPANY LIFE**
**INSURANCE PLAN,**
                              **Defendants**
_____

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
### OF HER CROSS-MOTION FOR JUDGMENT AND IN OPPOSITION TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case concerns a claim for Salary Continuation benefits pursuant to a Salary Continuation Plan provided by Defendant, American Express Company ("AMEX") to its employee, Plaintiff, as well as a claim for Long Term Disability benefits and continuation of Life Insurance (due to "total disability") pursuant to ERISA-covered employee benefit plans. The Salary Continuation claim is brought under theories of contract and quasi-contract, and this Court has supplemental jurisdiction over these claims due to the federal question claims at issue with respect to the ERISA-covered employee benefit plans.

Defendants have moved for summary judgment as to all claims. Plaintiff has cross-moved for judgment as to the ERISA-covered claims as the defendants failed to ever review her LTD and Life Insurance claims, despite her numerous written requests. Defendants have refused even to provide a denial of such claims. Summary judgment is not warranted with respect to the Salary Continuation claim as there remain several genuine issues with respect to the application of the plan, and defendants' determinations.

**BACKGROUND**

Ms. Kieft's claim for Salary Continuation due to her physical disability had its genesis in a fall suffered on September 22, 2002. After falling down stairs, Ms. Kieft required the assistance of an ambulance and treatment at a local emergency room. At the hospital, Ms. Kieft was treated for a sprained left ankle and injury to her left forearm and elbow, and thereafter, released. See, MetLife Aff. Ex. 2, KIEFT 304. Despite continuing pain and inflammation, she attempted to return to work after about two weeks. Ms. Kieft had been employed by American Express as a "floating" Travel Agent, which required that she travel to different American Express offices as needed. On October 14, 2002, Ms. Kieft returned to work, using a wheelchair in order to help her ambulate. She worked on October 14, at the Harvard, MA, office, and thereafter: October 15, Milford, MA; October 16, Nashua, NH; October 17, Milford, MA; October 18, Nashua, NH; October 21, Milford, MA; and, October 23, Nashua, NH.

By October 24, Ms. Kieft was still experiencing difficulties with pain and noted continued swelling and redness around the ankle. She had visited first her primary care physician, Dr. Oettinger, and was referred to an Orthopaedist, Dr. B.Eugene Brady. At that time, Dr. Brady diagnosed Ms. Kieft with a possible occult fracture and suspected ankle joint infection. Dr. Brady recommended a disability leave for an undetermined amount of time with "[v]ery limited weight bearing . . . [n]o more than absolutely necessary." His objective examination of October 24, 2002, noted decreased dorsiflexion, tenderness over the dorsal navicular area, cuboid area, and into the ATFL area, and decreased sensation to pinch in skin of dorsal toes. It also noted a marked antalgic gait. Review of x-rays indicated a 0.5 cm diameter fragment dorsal to the navicular on lateral view, read as likely an avulsion from the navicular. MetLife Aff. Ex. 2, KIEFT 171-72.

Ms. Kieft's follow-up with Dr. Brady's Physician's Assistant, on November 6, 2002, indicated her complaints that she is having trouble managing her activities of daily living,

that she continues to have pain, and can tolerate being on her feet no more than about 5-10 minutes. He noted Ms. Kieft's history of Rheumatoid Arthritis and psoriatic Arthritis and identified her generalized complaints of pain relative to these, as well as highlighting her scheduled treatment with Rheumatologist, Dr. Kohen. He also noted her inability to return to work, "and the markedly decreased function in general have aggravated her depression." On examination, Bartlett noted mild to moderate swelling in the left ankle and forefoot, as well as tenderness in all of the lateral ligaments, and a marked decrease of sensation to light touch throughout. In his written report, Bartlett noted that Ms. Kieft has some bilateral peripheral neuropathy associated with diabetes, but that the decreased sensation was attributable to the prior excision of lumbar disk fragments. Upon new x-rays, it was noted that there were no obvious signs of fracture, but an avulsion fragment still appeared just dorsal to the navicular. MetLife Aff. Ex. 2, KIEFT 177.

On December 2, 2002, Dr. Brady signed a MetLife Supplemental Attending Physician Statement in connection with Ms. Kieft's ongoing claim. The treating physician's statement indicated that he advised the patient to cease her noted occupation as of October 24, 2002. Dr. Brady stated further that she would be re-evaluated at her next appointment, the following day, December 3, 2002. MetLife Aff. Ex. 2, KIEFT 317-19.

Treatment notes of December 3, 2002, recognize that Ms. Kieft had been diagnosed as suffering from fibromyalgia, with its attendant, diffuse pain. In follow-up, Ms. Kieft's cast was removed and her ankle examined. Ms. Kieft was noted to have diffuse tenderness, and 50% range of motion, as well as atrophy due to immobilization in her left calf. Ms. Kieft was referred to physical therapy. MetLife Aff. Ex. 2, KIEFT 180.

As a result of her disabling condition, Ms. Kieft submitted a claim under the AMEX Salary Continuation Plan. By letter dated December 21, 2002, MetLife informed Ms. Kieft that her claim for benefits had been approved from September 17, 2002, through January 2, 2003. Thereafter, MetLife issued a denial letter to Ms. Kieft, dated February 11, 2003. MetLife

Aff. Ex. 3, KIEFT 337-38.  The letter states that after evaluation, it was determined that Plaintiff does not meet the definition of disability under the Plan.  In arriving at this conclusion, MetLife relied upon a Return to Work (RTW) Certificate, dated 11/18/02,  and signed by Donald Bartlett, PA.C., and office notes dated 11/19/02 and 12/13/02 from the office of Dr. Oettinger.  *Id.*  MetLife's stated reasons for denying Ms. Kieft's claim included:  a lack of elaboration of "disability issues" in the RTW certificate; and further, the "clinical documentation provided does not address your functional capability, restrictions or limitations."  MetLife concluded that the "medical documentation provided does not support a severity of symptoms which preclude Ms. Kieft from performing the functions of [her] job at American Express."  *Id.*

MetLife's denial of benefits erroneously rested on faulty assumptions.  First, the Return to Work certificate dated November 18, 2002, was not relevant.  Ms. Kieft's disability had already been approved under the plan through January 2, 2003, therefore it was stale and did not apply to Ms. Kieft's condition at the time of, and subsequent to, the denial of benefits.  In addition, MetLife had the Supplemental Attending Physician's Statement signed by Dr. Brady, dated December 2, 2002, which stated his opinion that Ms. Kieft be kept out on disability.  MetLife Aff. Ex. 2, KIEFT 317-19.

Thereafter, in an attempt to perfect her claim, Ms. Kieft submitted additional supportive records.  Assuming that the duties of Ms. Kieft's occupation require not only the sedentary-type activities normally required of a Travel Agent, but also travel to various offices as needed by her employer, she had continued to be unable to perform these duties.

Ms. Kieft had treated with Rheumatologist, Dr. Kohen.  In the office notes of Dr. Kohen dated as early as June 5, 2002, he indicates that Ms. Kieft has been diagnosed with psoriatic/ rheumatoid arthritis.  Also noted is that the patient is tender on palpation of both wrists, ankles, her hand second to fourth MCP joints, and her feet second to third metatarsal phalangeal joints bilaterally.  MetLife Aff. Ex. 3, KIEFT 191-92.  Treatment for diffuse fibromyalgia tenderness was noted on November 8, 2002, clinical examination.  *Id.* at 196.  On

December 3, 2002, Ms. Kieft's "prominent problem" was fibromyalgia. *Id.* at 197-98.

Ms. Kieft had also suffered from secondary symptoms of depression related to her physical disability. She had treated with Psychiatrist, Clive Dalby, M.D. In his March 6, 2003, narrative, Dr. Dalby noted that, Ms. Kieft's suffers from major depression, Type 2 diabetes, obesity, fibromyalgia, osteoarthritis and sleep apnea, with a history of spinal surgery. In conclusion, he opined: "Her current constellation of disease & symptoms would preclude gainful employment." MetLife Aff. Ex. 3, KIEFT 199.

Ms. Kieft's primary care physician, Dr. Oettinger, has best summarized her complicated treatment history and current course. This is more than the simple case of an injured ankle. In her narrative, dated March 5, 2003, Dr. Oettinger stated that Ms. Kieft suffers from sleep apnea, poorly controlled Type 2 diabetes, morbid obesity, fibromyalgia, and psoriasis/ rheumatoid arthritis. She concluded that due to her obesity Ms. Kieft has difficulties with ambulation, and complications of degenerative joint disease. Moreover, Dr. Oettinger confirmed that Ms. Kieft suffers from Fibromyalgia with associated cognitive deficits which contribute to difficulties in her mental capacity to perform work. Dr. Oettinger's stated opinion is that Ms. Kieft's condition and prescribed medications, as well as morbid obesity, preclude her from maintaining a full-time profession. According to Dr. Oettinger, based upon her "medical problems alone, [Ms. Kieft] certainly would need disability." MetLife Aff. Ex. 3, KIEFT 189-90.

In sum, the restrictions and limitations confirmed by Ms. Kieft's treating physicians, and specifically, limitations in her ability to ambulate, effects of pain on her ability to maintain attention and concentration, cognitive deficits attributable to both Fibromyalgia and her course of medications, together with secondary symptoms of depression, combined to render Ms. Kieft unable to perform the "material and substantial duties of her occupation" as a floating Travel Agent. See, Physical Residual Functional Capacity Questionnaires by Drs. Oettinger

(8/5/03) and Kohen (8/13/03), which describe Ms. Kieft's specific limitations.  MetLife Aff. Ex. 3, KIEFT 210-15, 216-55.


## ARGUMENT

It is undisputed that the Salary Continuation Plan is a payroll practice, and administered as such, is not subject to ERISA.  By contrast, the LTD Plan and Life Insurance Plan are ERISA-covered employee benefit plans.


### A.    Contract and Quasi-Contract Theories of Relief under the Salary Continuation Plan

First, defendants misapprehend Plaintiff's theories (in Counts I and II of her Amended Complaint) regarding her claims for Salary Continuation under the Salary Continuation Benefit plan.  Plaintiff does not here assert that she was, for relevant times, anything other than an employee-at-will.  Accordingly, she is not attempting to create, by use of the personnel manual describing such benefits, an overall contract of employment.  For this reason, *Jackson v. Action for Boston Community Development, Inc.*, 403 Mass. 8 (1988), is inapposite, as is defendant's use of *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115 (1st Cir. 1995) (intent to make a good faith effort to explore appropriate compensation package was only obligation arguably binding the employer, and was held fulfilled.).

Instead, the instant defendant promised Ms. Kieft, in exchange for her day-to-day labor, participation in its Salary Continuation plan.  Within the plan, it promised that if she met the plan's requirements (if she met its definition of "disability") she would receive the stated benefits for the stated time.

Defendants argue, by reference to a reservation by the employer to discontinue the benefit program at any time, that Plaintiff could have had no reasonable reliance.  In this case, however, she did reasonably rely upon the promise of her participation in the described salary continuation plan, and she suffered when benefits were unjustly stopped.  The fact that the

plan's terms could be changed or discontinued at any time is not here relevant where the facts are that the Plaintiff continued to work, day to day, and the plan *was not* discontinued.  See, *Evans v. Certified Engineering & Testing Co., Inc.*, 834 F.Supp. 488 (D.Mass. 1993) (citing, *Balkin v. Katz*, 373 Mass. 419 (1977) (employee's continued employment after promise of pension provides sufficient evidence of consideration to allow case to go to jury).  See also, *Doherty v. Doherty Ins. Agency, Inc.*, 878 F.2d 546 (1st Cir. 1989).  Again, Plaintiff's coverage under the terms of the plan is not at issue.  Defendants do not seriously dispute that the Salary Continuation plan applied to Ms. Kieft, but instead make a weak argument that it cannot be enforced through contract or quasi-contract theories.

> **B.    There Exist Genuine Issues of Material Fact Regarding Plaintiff's Claims for Salary Continuation Benefits**

While Plaintiff agrees that interpretation of a contract is ordinarily a question of law for the Court, *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995), that maxim applies specifically to the interpretation of the written word.  Open still in this case, are the issues for the fact finder, chief of which is whether the administrator correctly applied the written terms.  Defendants would have this Court–on Summary Judgment–compare the medical evidence in its claim file and determine that the opinions of its physicians, while conflicting with those of Plaintiff's, were correct.  This is a question for the jury.

Additionally, the defendants here suggest that the plan's inclusion of a clause reciting its authority and discretion in determining eligibility of benefits accords its denial deference.  Defendants suggest that absent an abuse of discretion, its denial must stand.  However, even assuming the contract allows such deference to the decision of the administrator of the plan, there still remain several issues which may only be resolved through weighing the conflicting factual evidence which was before the administrator.  These issues include, not only the overall issue of whether the administrator abused its discretion in finding that Ms. Kieft no longer met the definition of "disability" under the plan, but also such issues as:  the motives of

the administrator; the existence of an interest in the administrator conflicting with that of the claimant. See, Restatement (Second) of Trusts § 187 (Comment d.) (factors in determining whether there is an abuse of discretion include: motives of the trustee, existence of a conflict of interest.). These issues are demonstrated simply by reference to the following indisputable facts: (1) MetLife contracted with AMEX to administer the salary continuation plan and also insured the AMEX LTD Plan; (2) salary continuation benefits are paid for by AMEX, as it is a payroll practice; (3) by denying salary continuation benefits to Ms. Kieft, MetLife decreased its chance of liability for an LTD claim; (4) AMEX does not have to pay benefits when its Employee Benefit Administration Committee denies a claimant's appeal. Issues concerning the motivation of the administrator, and the existence of its conflict of interest are not a proper subject for summary determination, but instead should be put to the trier of fact. Moreover, in this case, such issues bear directly upon the question of whether the administrator abused its discretion.

**C.    Plaintiff Did Not Fail to Exhaust Her Administrative Remedies with Respect to Her Claims for Long Term Disability Benefits and Life Insurance Continuation**

Defendants admit that neither MetLife nor AMEX has ever reviewed Plaintiff's claims for LTD benefits or Life Insurance continuation. Def's Memo. at 11. Not only was there no review or appeal under either claim, but the defendants never even issued a denial of benefits. The defendants assert that Plaintiff did not file claims for these benefits, using the method outlined in the Summary Plan Description, they indicate that no telephone call was made to MetLife; however, they do concede that Plaintiff's "attorney alluded to long term disability benefits in certain correspondence."

First, the SPD provides that to apply for LTD benefits, a claimant should contact MetLife at a given telephone number; however, it also provides: "If you are already receiving Salary Continuation benefits, MetLife will review your claim during the fourteenth week to determine if you qualify for Long Term Disability benefits." AmEx. Aff. Ex. 3, KIEFT/AMEX

00250. The SPD presents an alternative to the phone-in method for filing a claim to those

employees, like Ms. Kieft, who have pending claims for salary continuation. According to the

Affidavit of Laura Sullivan (MetLife) filed by defendants, by the time Ms. Kieft's claim for

salary continuation was denied (January 2, 2003), she was–at a minimum–in the fourteenth week

of benefits. ("thirteen weeks and one day"). Aff. Laura Sullivan at ¶ 7.[1] Under the SPD's plain

language, MetLife had an obligation to evaluate Plaintiff's LTD claim "on its own motion."

Second, to say that Plaintiff's counsel "alluded to long term disability benefits in

correspondence," is a gross understatement. It is indisputable that both MetLife and AMEX

received actual notice, in written form, of Plaintiff's notice of claim for LTD benefits and Life

Insurance continuation.

In counsel's letter of June 16, 2003, addressed to MetLife at PO Box 14590, we

clearly advised:

> [I]f MetLife is the Plan Administrator or Claim Administrator for the Long Term
> Disability Plan under which Ms. Kieft is covered through her employment with
> American Express, please treat this letter as notice of claim thereunder, and
> provide the undersigned with any necessary claim forms, and a copy of the
> Summary Plan Description and any policy of insurance relative to such plan.

AmEx Aff. Ex. 7, KIEFT/AMEX 00020-24, 24.

On August 1, 2003, counsel sent another letter, this time addressed to AMEX's

Employee Benefits Department, its Employee Benefits Administration Committee ("EBAC"),

and also copied to MetLife at PO Box 14590. The letter requested SPD's for the Salary

Continuation Plan, LTD Plan, and Life Insurance Plan. In addition, we advised:

> By letter dated June 16, 2003, we also put MetLife on notice that Ms. Kieft is
> claiming Long Term Disability benefits under that Plan as well, and we
> incorporated her medical records (on file with MetLife) by reference as proof of
> claim. We have invited MetLife to forward any additional forms it may require for
> my attention for completion, but have yet to receive any response. By copy of
> this letter, we also put MetLife on notice of Ms. Kieft's claim for continuation of

---

[1]In fact, it *may* be said that she was by that time, within her twenty-first week of benefits,
and that the fourteenth week trigger for MetLife to consider her LTD claim had long passed.
MetLife never advised Ms. Kieft that it had determined that she did not qualify for LTD benefits.
Aff. Laura Sullivan ¶ 7.

> her life insurance benefits due to her disability, as provided by that plan. Again, we refer to the medical records it has on file as proof of claim, but would be happy to supplement that with any additional information it requires.

AmEx Aff. Ex. 7, KIEFT/AMEX 00033-34, 34.

By letter dated August 18, 2003, AMEX responded to Plaintiff's requests for the SPD's, but did not address her claim for LTD or Life Insurance Continuation benefits.

On August 22, 2003, counsel for Plaintiff sent yet another letter, addressed both to AMEX in its Health Services department, and copied to MetLife at PO Box 14590. Plaintiff advised yet again:

> Additionally, and as I have stated in prior correspondence both addressed to MetLife and American Express directly, Ms. Kieft incorporates by reference all of the medical documentation submitted in connection with her claim for salary continuation benefits, as well as the medical records enclosed herein, as part of her proof of claim for purposes of her claim for benefits under the American Express Long Term Disability Plan and her claim for a total disability waiver of premiums under the American Express Life Insurance Plan. To date, and despite our written requests, we have received no forms that would help us perfect these claims.

AmEx Aff. Ex. 7, KIEFT/AMEX 00018-19, 19.

Finally, there is an additional question as to whether the filing of an LTD claim may be accomplished by means other than telephone, as there is a discrepancy between the AMEX SPD's. The AMEX Health and Welfare Plans SPD provides in relation to filing a benefits claim:

> The Claims Administrator as listed in Plan Facts serves as the reviewer of initial claim submissions and first and second level appeals in connection with benefit claims for any of the Company's Health and Welfare Plans. If you have a benefits inquiry or claim, you may call or write the appropriate Claims Administrator.

AmEx Aff. Ex. 2, KIEFT/AMEX 00228. The SPD identifies the Claims Administrator (and Insurer) of the LTD Plan as "MetLife Disability Claims; P.O. Box 14590, Lexington, KY 40511-4590." AmEx Aff. Ex. 2, KIEFT/AMEX 00238.

Now come the defendants, seeking a dismissal of Plaintiff's claim because she did not telephone MetLife, but instead sent written notice and proof of claim. Defendants do not

10

deny that they had actual notice of the claim; but nonetheless, they admit that no evaluation of the claim has ever been done: not in 2003, when written notice was received; and not at any time since, nor since the commencement of this action. As demonstrated, the text of the SPD for the LTD Plan provides that MetLife will determine qualification for LTD benefits for a claimant whose salary continuation claim goes into its 14th week. Furthermore, the SPD which provides administrative information for all AMEX health and welfare plans provides that "If you have a benefits . . . claim, you may call or write the appropriate Claims Administrator" who is identified as MetLife. The numerous letters sent on behalf of Ms. Kieft were addressed specifically to MetLife at the address provided in the SPD.

ERISA requires that a plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Usually, a claimant is required to exhaust all available administrative remedies prior to filing suit in federal court. See *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988) (holding that exhaustion is required except in instances when the administrative procedures are futile or the remedy inadequate). However, there are also exceptions to the exhaustion requirement when a claimant has not received a notice of denial or has received inadequate notice. *Kodes v. Warren Corp.*, 24 F.Supp.2d 93 (D.Mass. 1998); *McLean Hosp. Corp. v. Lasher*, 819 F.Supp. 110, 122 (D.Mass. 1993) (citing *DePina v. Gen. Dynamics Corp*., 674 F.Supp. 46, 49 (D.Mass. 1987) (there exists an exception to the exhaustion requirement when "the claimant is wrongfully denied meaningful access to the procedures").

Such is the case in the instant matter. Plaintiff has received no decision on her claim. The numerous written notices of claim, delivered to both MetLife and AMEX have made no impression on either. Incredibly, the defendants now complain that the EBAC "was denied the opportunity to review plaintiff's claim." Def's Memo. at 12. This was not the Plaintiff's failing. Indeed the EBAC was put on notice of Plaintiff's claim by our letter of August 1, 2003.

11

Moreover, there has been no indication that the defendants have made any effort to review Plaintiff's claim, even since the commencement of this action.  They are in no position to cry foul.

        **D.**      **Defendants Should Not Be Allowed to Create Post-Hoc Reasons that They Would Have Denied Plaintiff's Claim for LTD Benefits–Judgment Should Enter in Favor of Plaintiff on the ERISA Claims**

        Both the statute and ERISA regulations require that the plan administrator provide a claimant with specific reasons for its denial of a claim.  ERISA provides that:

> In accordance with regulations of the Secretary, every employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.

29 U.S.C. § 1133.  The Department of Labor's implementing regulations require that, inter alia, the initial notice of a claim denial contain the "specific reason or reasons for the denial."  29 C.F.R. § 2560.503-1(f) (2003).  Similarly, any decision in subsequent internal appeals must include "specific reasons for the decision." § 2560.503-1(h)(3).  The regulations are designed to provide the claimant with an explanation of the denial that will allow for a meaningful review. *Halpin v. WW. Grainger, Inc*., 962 F.2d 685, 689 (7th Cir. 1992); see also *Terry v. Bayer Corp*., 145 F.3d 28, 39 (1st Cir. 1998).  The regulations also further the overall purpose of the internal review process to minimize the number of frivolous lawsuits; promote consistent treatment of claims, provide a nonadversarial dispute process, and decrease the cost and time of claim settlement.  *Glista v. UNUM Life Ins. Co. of America*, 378 F.3d 113, 129 (1st Cir. 2004).  "These goals are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Id*.

        In the instant case, the defendants have affirmatively chosen to give no reason for ignoring (effectively denying) Plaintiff's claim.  "Such conduct prevents ERISA plan

administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits." *Id.*  In *Glista*, the First Circuit, after finding one of the insurer's justifications for denial of an LTD claim to be inadequate, addressed its additional post hoc rationale.  It concluded that "Unum violated ERISA and its regulations by relying on a reason in court that had not been articulated to the claimant during its internal review."  *Id.* at 130.

Moreover, citing the broad remedial powers given the federal courts on review of ERISA claims, the *Glista* court barred the insurer from raising its rationale for denial of Plaintiff's claim for the first time in litigation.  *Id.* at 131.  Among the support for this conclusion, the court cited:  ERISA's statutory command that the administrator articulate specific reasons for a denial of benefits; the plan's express provision that participants receive a written explanation of the reason for the denial; the fact that no information was withheld from the insurer to cause it to be unable to raise the reason earlier; and, the Plaintiff's medical condition.  *Id.* at 131-32.

In application to the instant matter, the defendants should be barred from offering new rationale for a denial of Plaintiff's claim.  It is undisputed that they offered ***no rationale*** for a denial of the LTD and Life Insurance continuation claims; they never in fact denied the claims.  As in *Glista*, the instant plan provides that "[i]f the Claims Administrator denies your claim . . . the notification of the claims decision will state the reason why your claim was denied and reference the specific Plan provision(s) on which the denial was based."  AmEx. Ex.2, KIEFT/AMEX 00228.  In addition, it is clear that no information was withheld from the insurer that would prevent it from making a decision on the claim.  See, e.g., letters from Plaintiff's counsel.  Finally, yet another compelling reason for barring defendants from utilizing a post hoc rationale to support a denial of Plaintiff's claims is based in policy.  If the defendants' actions in ignoring Plaintiff's claim were to be allowed in this case, it would provide an incentive for administrators to refuse to act on other benefit claims.

As defendants offered Plaintiff no explanation concerning her claims for LTD and

13

Life Insurance Continuation benefits, they should be barred from creating one for the purposes of this litigation. While generally, "ERISA trusts plan administrators to make the first determination as to the availability of benefits" we ask that this Court follow *Glista*. MetLife and AMEX failed to state any reason to support a denial of Plaintiff's ERISA claims even though it had the burden, obligation, and opportunity to do so.[2] Accordingly, judgment should enter in Plaintiff's favor on the ERISA claims, an order should be entered requiring the plans to pay all benefits past due, with interest, and continue to apply the provisions of the plans to Plaintiff going forward.

> **E.    If the Court Deems Plaintiff's ERISA Claims Denied, She Should be Given an Opportunity to Supplement the Record**

Perhaps the most damaging effect of defendants' refusal to make a determination as to Plaintiff's claims is that she was denied any opportunity to rebut an LTD denial, or provide further contemporaneous information in support of her claim. For this reason, should the Court deem Plaintiff's ERISA claims denied, and determine that the plans are not barred from now creating a reason for such a deemed denial, fundamental fairness would require that Plaintiff be given the opportunity to review a specific written reason for said denial and offer evidence in rebuttal. For this purpose, Plaintiff would request a remand to the administrator with specific instructions.

> **F.    Plaintiff's Claim for Life Insurance Continuation**

Plaintiff's claim for continuation of life insurance benefits is misunderstood by defendants. Under the Life Insurance Plan, Plaintiff enjoyed basic coverage (one-times annual salary), at no additional cost to her. AmEx. Aff. Ex. 5, KIEFT/AMEX 00254. The Plan

---

[2]As in Glista, it is unknown "what additional information would have been provided to [the administrator]" or whether the Plaintiff would have settled her claim earlier. The plan's "failure may well have prevented a more efficient resolution of this case." *Glista v. UNUM Life Ins. Co. of America*, 378 F.3d 113, 132 (1st Cir. 2004).

provides that if the participant becomes "totally disabled," the life insurance coverage will continue, and that in order to qualify, one must submit proof of total disability.  KIEFT/AMEX 00258.  While "waiver of premiums" may not have been required, under the terms of the plan, Ms. Kieft, when "totally disabled" qualifies for a continuation, in force, of her basic life insurance.  Thus, the substance of Plaintiff's claim in this regard, is as set out *supra*:  notice of this ERISA claim was provided to MetLife and AMEX, and no decision was ever made.

## CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests this Court to enter summary judgment in her favor on Counts III and IV of her Amended Complaint, and to deny defendants' motion for summary judgment in all respects.

Dated: March 24, 2006
       Haverhill, MA

LAW OFFICE OF
STEPHEN L. RAYMOND, ESQ.
Attorney for Plaintiff

By:    */s/ Stephen L. Raymond*
       Stephen L. Raymond
       3 Washington Square, Ste. 206
       Haverhill, MA  01830
       (978) 372-6590
       BBO #567753