UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No. 04-10949-NMG

_____
                                    )
ALICE KIEFT,                        )
    Plaintiff                       )
                                    )
v.                                  )
                                    )
AMERICAN EXPRESS COMPANY,           )
ET AL.,                             )
    Defendants                      )
_____)


**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants oppose plaintiff Alice Kieft's motion for summary judgment.

**I.    Response To Plaintiff's Counter-Statement Of Facts**

Given the nature of this case, which in essence involves judicial review of an administrative determination of the plaintiff's claim for Salary Continuation benefits, the defendants agree that the summary judgment record includes the Summary Plan Descriptions, the Plan and those facts set forth in the claim file. Defendants object to the Counter-statement to the extent it is argumentative, and not supported by admissible evidence pursuant to L.R. 56.1 (see Counter-statements 26, 32, 40-41, 52-53).

The Salary Continuation Benefits policy, the American Express Company Employee Long Term Disability Plan, and the American Express Company Life Insurance Plan each contain a provision providing the applicable plan administrator with sole authority and discretion in determining eligibility for and interpretation and administration of the programs. See, Defendants' Statement of Material Facts ("Material Facts"), ¶¶ 8, 33. American Express

delegated discretionary authority to Metropolitan Life Insurance Company ("MetLife") to interpret and apply the terms of the insured plans, the American Express Company Employee Long Term Disability Plan and the American Express Company Life Insurance Plan, (collectively "the Plans"). See, Affidavit of Coleen A. Lyons, Ex. 2, KIEFT/AMEX 00233. In reviewing whether the defendants' determination of her Salary Continuation claim was arbitrary and capricious, it is appropriate for this Court to limit its review to the evidence that was before the defendants at the time of the final determination, particularly where this plaintiff has submitted no other evidence in support of her motion for summary judgment.  See, Chandler v. Raytheon Employees Disability Trust, 53 F. Supp. 2d 84, 85 n.1 (D.Mass. 1999), aff'd 229 F.3d 1133 (1st Cir. 2000), cert. denied, 531 U.S. 1114 (2001).

**II.   Argument**

As grounds for its opposition, the defendants incorporate by reference their summary judgment motion papers, including the Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants' Statement of Material Facts, the Affidavit of Laura Sullivan ("MetLife Aff."), and the Affidavit of Coleen A. Lyons ("AmEx Aff."), all of which establish that defendants are entitled to summary judgment in their favor.

> **A. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER CLAIMS FOR LTD BENEFITS OR FOR LIFE INSURANCE CONTINUATION WHERE IT IS UNDISPUTED THAT HER CLAIM HAS NOT YET BEEN REVIEWED.**

There is no dispute that plaintiff's claim for LTD benefits has not been reviewed by MetLife, the claim administrator.  Plaintiff asserts that this Court nevertheless should award her long-term disability ("LTD") benefits under the American Express Long Term Disability Plan ("LTD Plan") because (1) in her letters appealing the termination of her salary continuation benefits she asked that the letters also be treated as a claim for LTD benefits; and (2) the terms of

2

the LTD Plan state that if a participant is receiving Salary Continuation benefits, MetLife will review the claim for LTD benefits during the fourteenth week of Salary Continuation benefits. As set forth below, awarding plaintiff LTD benefits without first having her claim reviewed by the claim administrator is inconsistent with the policies of ERISA and the relevant case law.

Contrary to plaintiff's mischaracterization of MetLife's position, MetLife is not suggesting that a claimant must submit a claim by telephone rather than in writing.  In its moving papers, MetLife explained that plaintiff did not submit a claim via the procedure set forth in the Summary Plan Description for the LTD Plan.  Rather, in her letters appealing the termination of her Salary Continuation benefits, plaintiff asked that the appeal also be treated as a claim for LTD benefits.  MetLife acknowledged the appeal letter and the documents submitted by plaintiff on appeal and these documents were forwarded to the appeal specialist to commence the appeal process with respect to plaintiff's Salary Continuation benefits.  Because the request for the initiation of an LTD claim was contained within the appeal letter for the Salary Continuation benefits, rather than coming in through normal channels and because as an appeal, it was directed to an appeal specialist, who normally would not be receiving newly submitted claims, the claimant was not sent claim forms for completion.  Thus, the fact that the claim was not submitted via the procedures set forth in the LTD Plan resulted in the LTD claim not being processed.

Plaintiff suggests that the LTD claim should have been processed automatically because her claim was terminated after 13 weeks and one day (i.e. at the beginning of the 14th week).  In fact, under the LTD Plan an LTD claim is automatically processed during the 14th week if a participant is receiving salary continuation benefits.  Because plaintiff's benefits were terminated

3

effective the beginning of the 14th week, her claim was not automatically processed. This is not inconsistent with the terms of the LTD Plan.

Nevertheless, when plaintiff filed this litigation seeking LTD benefits in addition to Salary Continuation benefits, and it became clear that plaintiff had intended to file an LTD claim, defendants offered to review the plaintiff's long term disability benefits claim and her claim for waiver of insurance premiums. (See Letter from McGrane dated April 12, 2005 attached as Ex. A). This offer was intended to stay the action to promote resolution of the claim dispute, and to provide plaintiff with an appeal process consistent with the Plans. Instead of permitting this review and the appeal process, the plaintiff turns the legitimate denial of her Salary Continuation claim into a justification for summary judgment against the defendants on her long term disability and life insurance claims. She argues that the alleged lack of denial or review of plaintiff's additional claims should require judgment in her favor. Following plaintiff's reasoning, even if the Salary Continuation claim was correctly decided because a reasonable determination was made that she was not disabled, plaintiff would be entitled to long term disability benefits. This outcome would defeat the public policy reasons for the exhaustion principle.

The public policy reasons underlying the exhaustion doctrine were set out in detail in McLean Hospital Corp. v. Lasher, 819 F. Supp. 110 (D. Mass. 1993). These public policy reasons for exhaustion are fully implicated by this litigation and are the following:

    (1)    to reduce frivolous lawsuits under ERISA;
    (2)    to promote consistent and uniform treatment of claims and benefits;
    (3)    to provide a nonadversarial method of claims settlement, and to encourage private resolution of ERISA related disputes…;
    (4)    to minimize the cost of claims settlement for all parties involved;
    (5)    to foster the intent of Congress and the Secretary in establishing administrative remedial procedures which were to be regularly used by aggrieved claimants…; and perhaps most important,

>    (6)    that prior considered actions by plan trustees or administrators interpreting their plans, refining and defining problems in cases, may well assist the courts in resolving the controversies eventually litigated…

Id., at 121-2 (citations omitted). The plaintiff has the burden of asserting facts to support any claimed exception to the exhaustion requirements, such as futility, irreparable harm or wrongful denial of meaningful access to the procedures. Id., at 123, see Drinkwater v. Metropolitan Life Insurance Co., 846 F. 2d 821, 826 (1st Cir.), cert. denied, 488 U.S. 909 (1988) (plaintiff's unsupported assertion of futility insufficient to overcome motion for summary judgment). The plaintiff has presented insufficient facts for her to overcome this burden.[1]

The outcome sought by plaintiff is also inconsistent with cases which have found that even though defendants failed to comply with claim procedures, plaintiff's claim should be reviewed under the arbitrary and capricious standard required by the Plan. See Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F. 3d 1168 (10th Cir. 2004), McGarrah v. Hartford Life Insurance Co., 234 F. 2d 1026 (8th Cir. 2000), Daniel v. Eaton, Corp. 839 F. 2d 263 (6th Cir. 1988). Even those cases which have held that a "deemed denied" claim is entitled to de novo review, have recognized that the arbitrary and capricious review might still be appropriate if the plan administrator "substantially complied" with the deadlines. See Nichols v. Prudential Ins. Co. of America, 406 F. 3d 98, 109 (2d Cir. 2005). These cases have not held that the defendants failure to comply with claim procedures results in summary judgment for the plaintiff, only that in some circumstances the standard of review of the "deemed denied" decision will be different. In this case, Ms. Kieft's short term disability claim and the medical records she submitted were fully and completely reviewed, and she was

---

[1] Plaintiff's attorney's letters, which were sent months after the salary continuation claim was initially denied, among other things, asked for claim forms for Long Term Disability and life insurance benefits. It is disputed whether these letters constituted claims for long term disability benefits or life insurance benefits. See Material Facts, ¶¶34, 35

5

provided with two levels of appeal. If this record was considered for her long term disability claim, and it was deemed denied, its denial was supported by substantial evidence. Accordingly, summary judgment for the plaintiff is unwarranted.

The cases cited by plaintiff to avoid the exhaustion requirement do not support the extraordinary result of judgment in her favor on her Counts for long term disability and life insurance benefits. For example, plaintiff cites Kodes v. Warren Corp., 24 F.Supp. 2d. 93 (D.Mass. 1998). Kodes did not hold that plaintiff was entitled to avoid exhaustion requirements and obtain benefits due to a lack of notice, only that defendant was not entitled to summary judgment where an issue of fact remained as to whether plaintiffs received notice of the denial of benefits. This case also contrasts with the situation presented in Glista v. UNUM Life Ins. Co. of America, 378 F. 3d 113 (1st Cir. 2004), cited by the plaintiff for her reasoning. In Glista, the plan administrator defended the denial of benefits in litigation on the basis of a clause which had not been identified to the claimant during the exhausted administrative review process. There was no question whether or not claimant had used the internal review process, only whether the new additional reason for denying the plaintiff's claim which had not been clearly articulated in the review process could be used by the defendant. Here, the plaintiff has not used the internal review process - there has been no articulation of any reason for denial of long term disability benefits – because it has not in fact occurred.

A more analogous fact pattern is found in Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust, 50 F. 3d 1478 (9th Cir. 1995). In Diaz, the Spanish speaking agricultural worker's claim was dismissed because he had failed to exhaust the plan's own internal review procedures. Instead of following the directions for an appeal printed on the back of denial letters, after the denial of benefits for his leukemia-stricken daughter, he went in person to the

6

employer's on-site insurance representative and asked for advice. Although recognizing that the plaintiff went to the on-site insurance representative and asked "What am I going to do?" without response, the District Court's allowed the defendant's motion for summary judgment for failure to exhaust, citing the important public policy reasons for exhaustion. The Ninth Circuit, affirming the dismissal, held there was no error in the application of the exhaustion doctrine, or abuse of discretion in refusing to recognize an exception to the exhaustion doctrine.

Here, Ms. Kieft was represented by counsel through much of her salary continuation appeal process. Plaintiff's counsel describes the letters he wrote, and the lack of response to his inquiries, which suggests among other things, that the plaintiff's purported claim was not being reviewed. There is no explanation of why neither he nor plaintiff telephoned the proscribed MetLife phone number. Instead of pursuing internal procedures to obtain a review, the plaintiff filed suit asserting that her claim was denied. Diaz recognized the strong public policy reasons for exhaustion, in dismissing the plaintiff's claim - including the reduction of frivolous litigation and permitting the possibility of an administrative look at the merits. As here, the Summary Plan Description provided the appeals procedure, an address and two telephone numbers for assistance. Diaz, as the plaintiff here, failed to explain why that phone call was not made. The Ninth Circuit affirmed the District Court's application of the exhaustion doctrine to dismiss the plaintiffs' claim. This Court should also dismiss the plaintiffs' claims for long term disability and life insurance benefits for failure to exhaust.

**B. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER CLAIM FOR LONG TERM DISABILITY BENEFITS WHERE IT IS UNDISPUTED THAT THERE IS SUFFICIENT EVIDENCE TO SUPPORT A DETERMINATION THAT PLAINTIFF WAS NOT DISABLED.**

The First Circuit has held that, even where a potential conflict of interest exists, when there are no circumstances indicating an improper motivation on the part of the insurer, the

standard of review of a discretionary determination is the familiar arbitrary and capricious standard, which requires a court "to simply ensure that the termination decision was not objectively unreasonable in light of the available evidence." Fenton v. John Hancock, 400 F. 3d 83, 90 (1st Cir. 2005); Pari-Fasano v. ITT Hartford Life and Accident Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000). As a threshold issue, Kieft has the burden of proving that she was disabled to recover benefits. Brigham v. Sun Life of Canada, 317 F.3d 72, 84-85 (1st Cir. 2003). Given the available evidence considered in connection with her Salary Continuation claim, and plaintiff's burden of proof, even if this Court determines that Kieft's claim for long term disability benefits may be deemed denied, such determination was not objectively unreasonable.

The defendants considered all of the medical records submitted by plaintiff in her two levels of appeal of the denial of her Salary Continuation claim arising from her ankle sprain. Three independent physician reviews were obtained of her medical records, each of which concluded that she could perform her primarily sedentary occupation as a Travel Agent. The defendants' determination that she was not entitled to benefits past January 2, 2003 was supported by substantial evidence. The evidence included information from her own treating orthopedist who indicated that as of December 3, 2002, plaintiff could "walk without pain." See, MetLife Aff. Ex. 2, KIEFT 00180.

Although plaintiff cites to a narrative by her primary care physician to support her claim for disability, a review of the letter does not reveal a determination that she was totally disabled. See, MetLife Aff., Ex. 2, KIEFT 189-90. Instead, Dr. Oettinger includes a number of reservations in her letter of March 5, 2003. For example, the letter states "I have not performed a formal physical evaluation of her ability to ambulate…" It further hedges, "Again, I am an internist and have not performed formal physical therapy evaluation nor formal mental capacity

8

evaluation. However, based on her medical problems alone, she certainly would need disability." The provision of long term disability benefits requires more than a desire or economic need for disability benefits, it requires objective evidence that plaintiff is unable to perform her regular job. AmEx. Aff., Ex. 3, KIEFT/AMEX 00251. The medical records provided by the plaintiff do not support this finding.

Although the defendants never explicitly considered or reviewed the plaintiff's long term disability claim, defendants did not hold the reasons for denying plaintiff additional Salary Continuation benefits in reserve. The reasons for denying plaintiff further salary continuation benefits were clearly articulated, and reconsidered at two levels of appeal. The Salary Continuation benefits claim was appropriately decided, and the plaintiff failed to provide sufficient evidence to support either a short term or long term disability claim.

### C. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER CLAIM FOR WAIVER OF LIFE INSURANCE PREMIUMS WHERE IT IS UNDISPUTED THAT SHE DID NOT PURCHASE OPTIONAL LIFE INSURANCE AND SHE DID NOT SEEK BENEFITS UNDER THE PLAN.

Plaintiff now claims that defendants misunderstand her claim for continuation of life insurance benefits, because while it is undisputed that she did not pay any premiums for life insurance benefits, she would have enjoyed basic coverage at no cost to her. This "misunderstanding" is based upon the allegations of the plaintiff's Amended Complaint, which repeatedly alleges that the claim was for "waiver of premiums." Plaintiff's Amended Complaint, ¶¶59, 61. This is the only allegation of harm in Plaintiff's Amended Complaint or her motion for summary judgment relating to the Life Insurance Plan. There is no allegation that she attempted to obtain death benefits under the Life Insurance Plan, or any other allegation of lost benefits. The plaintiff is bound to the allegations in her Amended Complaint. Schott Motorcycle Supply, Inc., v. American Honda Motor Company, Inc., 976 F. 2d 58 (1st Cir. 1992).

9

It is undisputed that the Life Insurance Plan is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq. ERISA's civil enforcement provisions, at Section 502 (a), provide the exclusive vehicle for plaintiff to enforce any rights as a beneficiary under the Life Insurance plan. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987). Under the civil enforcement provisions, a plan participant may sue to recover benefits due, to enforce rights under the plan or to clarify rights to future benefits. In addition, a participant may bring a cause of action for breach of fiduciary duty to seek appropriate relief due to the breach of fiduciary duty. Id. at 53. The plaintiff has not alleged that she, or the beneficiary of the life insurance policy, are not receiving the appropriate level of benefits under the Plan. Accordingly, she cannot make out a claim for benefits due. Further, she is not seeking the recovery of any losses to the Plan or other relief provided under ERISA for breach of fiduciary duty. See 29 U.S.C. §1109 (describing liability for breach of fiduciary duty). Her only claim was for "waiver of premiums," an obligation that does not apply to the facts of the case since she did not pay premiums under the Life Insurance Plan. Material Facts, ¶43.

Plaintiff now attempts to avoid the undisputed fact that she never purchased optional life insurance coverage, nor made a claim for benefits, by arguing that no decision was made on her attorney's reference in correspondence to an unfounded claim for waiver of premiums. Even assuming that the attorney's reference in any way constituted a claim for benefits,[2] it does not make out a claim under ERISA since she had

---

[2] The Life Insurance Plan provides the method for filing a claim for life insurance benefits by providing MetLife with written notice of the employee's death or the employee's dependent's death. Material Facts. ¶47. As outlined in defendants' summary judgment motion, there has been no review of any alleged decision on plaintiff's claim for life insurance coverage, and this count may also be dismissed for failure to exhaust.

no existing claim for benefits under the Plan. To the extent plaintiff now tries to characterize her complaint as one for future benefits, this claim suffers from the same exhaustion problem as applies to her long term disability claim. The plaintiff's claim should be dismissed for failure to exhaust administrative remedies, and because it fails to state a cognizable claim under ERISA.

**III.    Conclusion**

The defendants provided two levels of review of the plaintiff's claim for Salary Continuation benefits. Three physicians reviewed the plaintiff's claim. Under the Salary Continuation policy, the defendants were given the discretion to weigh and interpret the evidence, and the fact that there were alternative ways of interpreting the evidence does not mean that their interpretation was unreasonable. See Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 32 (1st Cir. 2001) ("It is the responsibility of the Administrator to weigh conflicting evidence."); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 185 (1st Cir. 1998) (administrator's discretionary power includes ability to make "factual findings as to plaintiff's condition"); Guarino v. Metropolitan Life Ins. Co., 915 F. Supp. 435, 445 (D.Mass. 1995) ("MetLife had the discretion to interpret the Plan, weigh the evidence, and make its own final determination.").

The discretionary clause, as well as the undisputed fact that the Salary Continuation program could be discontinued at any time, compel for consideration of the administrative record pursuant to these familiar ERISA standards. The decision to terminate the plaintiff's Salary Continuation benefits was supported by substantial evidence in the administrative claim record, and was not arbitrary and capricious. The defendants met the obligations of the Salary Continuation program, and appropriately terminated her benefits.

In spite of clear statements that the entire Salary Continuation program could be withdrawn at any time, and without any admissible evidence regarding reasonable reliance, the plaintiff seeks to bootstrap her claim for approximately $3,000.00[3] into lifetime long term disability benefits.  The plaintiff has failed to submit admissible evidence to show that she reasonably relied on any unambiguous promise that she would be provided with Salary Continuation payments, and the undisputed evidence shows that she was an "at-will" employee. Material Facts, ¶1.  Accordingly, summary judgment should enter against the plaintiff on her claim for "promissory estoppel."  See, Upton v. JWP Businessland, 425 Mass. 756 (1997) (employer's statements about regular hours of work insufficient to create unambiguous promise to avoid entry of summary judgment against at-will employee terminated for unwillingness to work long hours).

---

[3] Even if plaintiff was totally disabled, the Salary Continuation claim would only entitle her to an additional six weeks of payments, which is $3,356.14 before lawful deductions.  Material Facts, ¶10; MetLife Aff. ¶7.

Finally, the public policy reasons for exhaustion of administrative remedies support the denial of plaintiff's motion for summary judgment. Among other purposes, the doctrine is designed to help avoid frivolous lawsuits and encourage private resolution of disputes. For these reasons, together with the reasons set forth in defendants' summary judgment motion papers, the defendants respectfully requests that Kieft's summary judgment motion be denied and that summary judgment be granted in their favor.

>DEFENDANTS,
>By their attorneys,
>
>/s/ Constance M. McGrane
>_____
>James F. Kavanaugh, Jr.  BBO #262360
>Constance M. McGrane  BBO #546745
>CONN KAVANAUGH ROSENTHAL
>   PEISCH & FORD, LLP
>Ten Post Office Square
>Boston, MA  02109
>(617) 482-8200

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served electronically through the ECF system to the registered participants identified on the Notice of Electronic Filing on this 23rd day of June 1006.

>/s/ Constance M. McGrane, Esq.

256511.1