**United States District Court**
**District of Massachusetts**

```
                                    )
ALICE KIEFT,                        )
                                    )
         Plaintiff,                 )
                                    )    Civil Action No.
         v.                         )    04-10949-NMG
                                    )
AMERICAN EXPRESS CO. et al.,        )
                                    )
         Defendants.                )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In the instant case, Alice Kieft ("Kieft") alleges that she was wrongfully denied salary continuation benefits as well as long term disability benefits and continuation of life insurance by American Express Company, American Express Company Long Term Disability Plan and American Express Company Life Insurance Plan (collectively "the defendants" or "American Express"). Defendants move for summary judgment on all claims. Plaintiff opposes that motion and cross-moves for summary judgment with respect to the ERISA claims. Having considered the memoranda in support of and opposition to the pending motions, the Court resolves the motions as follows.

## I.   **Background**

Kieft was employed by American Express as a "floating"

-1-

Travel Agent until October, 2002.  Her job responsibilities required her to travel to different American Express offices as needed.

While she was employed, Kieft participated in a "Salary Continuation Plan" ("the SCP"), which is not governed by the Employment Retirement Income Security Act ("ERISA").  The SCP provided for a continuation of an employee's salary for 26 weeks, at 100% for the first four weeks and 70% for the remainder of the period, if an employee became unable to work due to a "disability".

For a period up to and including October 24, 2002, Kieft was also a participant in a Long Term Disability Plan ("the LTD Plan"), which provided for payment of a monthly income benefit to participants who became disabled, with payments beginning after a six-month elimination period.  In addition, the LTD Plan provided that an employee who was "totally disabled" would receive a "waiver of premium" under American Express's Life Insurance Plan.

Kieft fell down some stairs on September 22, 2002, and required the assistance of an ambulance and treatment at a local emergency room where she was treated for a sprained left ankle and injury to her left forearm and elbow.  Kieft returned to work two weeks later, although she soon began using a wheelchair to help her move about.  Kieft stopped working on October 24, 2002, as a result of multiple physical symptoms she experienced which

-2-

prevented her from performing the duties of her job.

Sometime before October 24, 2002, plaintiff applied for benefits under the SCP. MetLife, which administered the SCP on behalf of American Express, initially approved Kieft's request for the period September 23, 2002, through October 7, 2002, and again approved her application for benefits through January 2, 2003. By a letter dated February 11, 2003, however, plaintiff's claim for continuing benefits under the SCP was denied. Kieft appealed that denial, first to MetLife and later to American Express but the denial was upheld. That denial forms the basis of plaintiff's claim for breach of contract (which is not an ERISA claim because ERISA does not apply to SCPs).

On June 16, 2003, plaintiff allegedly sent a letter to defendants claiming benefits under the LTD Plan and a waiver of premium under the Life Insurance Plan. Kieft alleges that defendants never responded to those claims and that, therefore, her claims are "deemed denied".

Plaintiff filed a complaint on May 12, 2004, alleging three counts: 1) breach of the SCP, 2) failure to provide ERISA review of her claim for LTD benefits and 3) failure to provide ERISA review of her claim for a waiver of premium under the Life Insurance Plan. Plaintiff seeks a declaration that she is "totally disabled" and is entitled to the above-described benefits. In December, 2004, defendants answered denying the

-3-

allegations.  In July, 2005, plaintiff moved to amend her
complaint, which defendants did not oppose, and the Court allowed
that motion in September, 2005.  Plaintiff's amended complaint is
similar to her original complaint but for the addition of a new
claim for promissory estoppel with respect to the SCP (Count II).

## II.  **Discussion**

### A.   **Legal Standard for Summary Judgment**

The role of summary judgment is "to pierce the pleadings and
to assess the proof in order to see whether there is a genuine
need for trial."  Mesnick v. General Elec. Co., 950 F.2d 816, 822
(1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46,
50 (1st Cir. 1990)).  The burden is upon the moving party to
show, based upon the pleadings, discovery and affidavits, "that
there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  Fed.
R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the
suit under the governing law."  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant
or unnecessary will not be counted."  Id.  A genuine issue of
material fact exists where the evidence with respect to the
material fact in dispute "is such that a reasonable jury could
return a verdict for the nonmoving party."  Id.

-4-

Once the moving party has satisfied its burden, the burden
shifts to the non-moving party to set forth specific facts
showing that there is a genuine, triable issue. Celotex Corp. v.
Catrett, 477 U.S. 317, 324 (1986). The Court must view the
entire record in the light most hospitable to the non-moving
party and indulge all reasonable inferences in that party's
favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).
If, after viewing the record in the non-moving party's favor, the
Court determines that no genuine issue of material fact exists
and the moving party is entitled to judgment as a matter of law,
summary judgment is appropriate.

**B.   Analysis**

**1.   State Law Claims**

Kieft brings two state-law claims against the defendants.
She alleges that the SCP was an express contract and that the
defendants breached that contract by failing to evaluate properly
her claim for eligibility under the SCP after January 2, 2003
(Count I). Kieft alleges that, in the alternative, the SCP
served as a promise on which she reasonably relied and that,
therefore, defendants should be estopped from denying her claim
for eligibility under the SCP after January 2, 2003 (Count II).

Both parties agree that Kieft was an "at-will" employee of
American Express. Nevertheless, Kieft alleges that the SCP was a
contract by virtue of the employer's offer which she accepted and

for which she rendered consideration by continuing to work at
American Express.  Defendants respond that there could be no
contract because the SCP expressly stated that American Express

> reserves the right to make changes in, or discontinue,
> Company policies, compensation plans, benefits and programs
> as it deems appropriate, and these changes may be
> implemented even if they have not been communicated in this
> (or by change to this) document or otherwise.

The SCP goes on to state explicitly: "This memo does not create a
contract of employment between the Company and any employee."

Kieft makes only passing reference to the quoted provision
in her opposition to defendants' motion for summary judgment.
Rather, she asserts that AMEX promised her participation in the
SCP in exchange for her day-to-day labor.  The cases that Kieft
cites in support of her assertion that there was a contract are,
however, either irrelevant or inapt.

In contrast, defendants effectively cite <u>Jackson</u> v. <u>Action
for Boston Community Development, Inc.</u>, 403 Mass. 8, 14-15
(1988), in support of their proposition that there was no
contract because of their ability to amend unilaterally or to
terminate the SCP.  In fact, later Massachusetts cases that have
found employment manuals to constitute contracts did not contain
clauses authorizing the employer to change its provisions
unilaterally as in the instant case.  See, e.g., <u>O'Brien</u> v. <u>New
England Tel. & Tel. Co.</u>, 422 Mass. 686, 692-93 (1996).  <u>Cf.</u>
<u>Hillstrom</u> v. <u>Best Western TLC Hotel</u>, 265 F. Supp. 2d 117, 129 (D.

-6-

Mass. 2003)(interpreting an employment manual as not creating an employment contract when there were 1) express indications that it was for informational purposes only and 2) a provision authorizing the employer to change its terms unilaterally).  In the instant case, American Express has similarly retained the unilateral right to make changes to, or discontinue, the SCP and has stated in the plan that it does not create a contract of employment.  Thus, based on the relevant case law alone, defendants have demonstrated that there is no contract with Kieft.

Kieft's promissory estoppel claim is similarly unavailing. To succeed on a claim for promissory estoppel, Kieft must demonstrate, among other things, that she reasonably relied on an alleged promise to her detriment.  Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1124 (1st Cir. 1995).  However, given the explicit language in the SCP expressly reserving American Express's right to discontinue the SCP at any time, Kieft could not have reasonably relied on any such alleged promise.

Moreover, even if there is a contract or quasi-contract between defendants and Kieft, that contract is limited to an obligation to determine eligibility under the SCP's definition of "disability", an obligation with which defendants have complied. The SCP explicitly states that "[t]he applicable plan administrator has the sole authority and discretion in

-7-

determining eligibility for and interpretation and administration

of the programs." That language indicates that Kieft must

demonstrate that defendants' interpretation of "disability"

relative to her was an abuse of discretion.

From the facts presented, plaintiff cannot meet the high

standard required. MetLife terminated Kieft's eligibility for

SCP benefits on the basis of its initial review of the medical

records that Kieft submitted and later upheld that determination

after a further review by two other physicians. In reviewing

Kieft's second appeal, American Express forwarded Kieft's medical

records to an outside physician for an independent review of her

functionality. That independent review yielded the conclusion

that "[t]here was no objective measurement of [Kieft's] physical

capacity or mental capacity that would document impairment

sufficient to render her disabled." Given that the SCP provides

complete discretion to the administrator to make eligibility

determinations and that Kieft's medical records were reviewed by

three physicians all of whom concluded that she was not disabled,

defendants' conclusion was not an abuse of discretion.

In accordance with the foregoing analysis, the Court will

allow summary judgment for defendants on both of Kieft's state

law claims (Counts I and II).

-8-

### 2.   ERISA Claims

#### a.   Exhaustion of Administrative Remedies

The first dispute between the parties concerns whether Kieft failed to exhaust her administrative remedies with respect to her claims for LTD benefits and Life Insurance continuation.  An ERISA plaintiff is required to exhaust all claims for benefits through an appeal process prior to filing litigation.  Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir. 1988); Santana v. Deluxe Corp., 12 F. Supp. 2d 162, 174-75 (D. Mass. 1998).  The exhaustion requirement is relaxed when resort to the administrative route would be futile or the remedy inadequate. Drinkwater, 846 F.2d at 826.  Moreover, exhaustion is not required where a claimant has not received a notice of denial or has received inadequate notice.  Kodes v. Warren Corp., 24 F. Supp. 2d 93, 102 (D. Mass 1998).  See also McLean Hosp. Corp. v. Lasher, 819 F. Supp. 110, 123 (D. Mass. 1993)(citing DePina v. Gen. Dynamics Corp. 674 F. Supp. 46, 49 (D. Mass. 1987))(holding that there exists an exception to the exhaustion requirement when "the claimant is wrongfully denied meaningful access to the procedures").

Here, it is undisputed that neither MetLife nor American Express ever reviewed Kieft's claims for LTD benefits or Life Insurance premium waivers.  It is also undisputed that Kieft did not file a claim for LTD or Life Insurance benefits through the

-9-

method proscribed in the Summary Plan Description ("SPD") or that she ever appealed any decision of a denial of her claim for such benefits.  The dispute in this case arises from Kieft's assertion that this Court should, nevertheless, award her LTD and Life Insurance benefits because 1) her attorney stated in various letters appealing the termination of Kieft's SCP benefits that such letters should be treated as a claim for LTD and Life Insurance benefits and 2) the terms of the LTD Plan required MetLife automatically to review a claim for LTD benefits of any participant receiving SCP benefits during the fourteenth week of receipt of such benefits.

Although Kieft's attorney did request initiation of an LTD claim within the text of the appeal letter for SCP benefits, that request was not only unorthodox but also at variance with the procedures outlined in the SPD.  An appeal letter is directed to an appeal specialist who does not handle newly submitted claims. Thus, it is not surprising that Kieft did not receive LTD benefit forms in response to his request.

Nevertheless, Kieft has made a colorable argument that defendants did not comply with their own SPD procedures when they failed to review automatically Kieft's claim for LTD benefits during her fourteenth week of receiving SCP benefits.  The relevant language in the SPD states:

> If you are already receiving Salary Continuation benefits, MetLife will review your claim during the fourteenth week to

-10-

determine if you qualify for Long Term Disability benefits. That review never took place.

Defendants respond unpersuasively that, under the SPD, an LTD claim is automatically processed during the fourteenth week and, because Kieft's benefits were terminated effective at the beginning of the fourteenth week, her claim was not automatically processed. Whether Kieft's SCP benefits were terminated at the beginning or during the fourteenth week, it is undeniable that she was still receiving such benefits into the subject week (even if only by one day) and MetLife had a responsibility to review her claim for LTD benefits automatically. It did not do so and, therefore, the Court finds that Kieft's ERISA claims are not barred by her failure to exhaust administrative remedies. See Corsini v. United Healthcare Corp., 965 F. Supp. 265, 269 (D.R.I. 1997)(stating that because the exhaustion requirement rests on the assumption that notice of denial has been provided, a fiduciary who has not provided such notice is foreclosed from insisting upon exhaustion of administrative remedies).

### b.    Standard of Review

The critical issue left for this Court's consideration is the correct standard of review to apply to defendants' denial of LTD and Life Insurance benefits to Kieft. The plaintiff argues that de novo review is appropriate while defendants press for application of the "arbitrary and capricious" standard.

-11-

The United States Supreme Court has held that denials of benefits challenged under 29 U.S.C. § 1132(a) are to be reviewed de novo unless the plan under consideration gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard applies. See Gritzer v. CBS, Inc., 275 F.3d 291, 295 (3d Cir. 2002)(citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Here, American Express funds the LTD Plan and that Plan gives it unfettered discretion to interpret the Plan and to determine entitlement to its various benefits. But this case is unique in that American Express, and MetLife as administrator of the LTD Plan, never made any effort to analyze Kieft's claim. Thus, there is no analysis or reasoning to which this Court can defer under the arbitrary and capricious standard.

There is a split among the circuit courts on the question now facing this Court, specifically whether a "deemed denied" claim is entitled to review de novo or under an "arbitrary and capricious" standard. See Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 109 (2d Cir. 2005)(surveying the cases). A majority of circuits have held that, absent substantial evidence of compliance with the deadlines, de novo review applies on the grounds that inaction is not a valid exercise of discretion and leaves the court without any decision or application of expertise

to which to defer. See, e.g., id.; Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1106-07 (9th Cir. 2003); Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 632-33 (10th Cir. 2003); Gritzer, 275 F.3d at 295-96. The Fifth Circuit Court of Appeals followed a different path, holding that a "deemed denied" claim is still entitled to deferential review on the grounds that a decision to deny is the same whether accomplished formally or by inaction. S. Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 101 (5th Cir. 1993). The First Circuit has not provided guidance on this unique issue.

Having surveyed the various approaches, this Court is persuaded by the reasoning offered by the Eighth Circuit Court of Appeals. That court held that where an ERISA plan administrator denies a participant's initial application for plan benefits but fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review de novo "rather than for abuse of discretion if the review panel's inaction raises serious doubts about the administrator's decision." Seman v. FMC Corp. Ret. Plan for Hourly Employees, 334 F.3d 728, 733 (8th Cir. 2003). However,

> [when] a plan administrator fails to render any decision whatsoever on a participant's application for benefits, it leaves the courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision.

Id.

Here, defendants have failed to render any decision on Kieft's application for LTD and Life Insurance benefits, thereby leaving this Court with nothing to review under any legal standard. Given those circumstances, this Court will remand Kieft's application for LTD and Life Insurance benefits to American Express and its claims administrator, MetLife, for a full and fair determination on the merits.

-14-

**ORDER**

In accordance with the foregoing, Defendants' Motion for Summary Judgment (Docket No. 20) is, with respect to Counts I and II, **ALLOWED** but is, in all other respects, **DENIED WITHOUT PREJUDICE**.  Plaintiff's Cross-Motion for Summary Judgment (Docket No. 25) and Motion for Judgment as a Matter of Law (Docket No. 29) are **DENIED WITHOUT PREJUDICE**.  Plaintiff's application for LTD and Life Insurance benefits is remanded to American Express and its claims administrator, MetLife, for a full and fair review.  On remand, the review process shall include 1) the issuance by MetLife, within 60 days, of a written decision in compliance with applicable ERISA regulations and, if necessary, 2) administrative appeal proceedings within the regulatory time frame.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated September 14, 2006

-15-